IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BRUCE-TERMINIX COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20-CV-962 |
| | ) | |
| THE TERMINIX INTERNATIONAL COMPANY LIMITED PARTNERSHIP, and TERMINIX GLOBAL HOLDINGS, INC., | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiff Bruce-Terminix Company holds an exclusive license from the defendant Terminix International Company Limited Partnership to use the Terminix name, brand, and "Terminix System" in 17 counties in North Carolina. Bruce seeks a preliminary injunction prohibiting Terminix and its parent company, the defendant Terminix Global Holdings, Inc., from merging with or disclosing certain confidential information to Rentokil Initial PLC, a company that owns at least one competing business in Bruce's exclusive territory, or Rentokil's subsidiaries.

Bruce is unlikely to succeed on the merits of its claim that the merger itself violates the License Agreement or its claim that Terminix and TGH may not disclose confidential information related to the Terminix System to Rentokil after the merger. While Bruce will likely succeed on the merits of its claim that the License Agreement

prohibits Terminix from disclosing the Terminix System to TGH or Rentokil if the System would then be shared with Rentokil's subsidiaries within Bruce's territory, Bruce has not shown that a disclosure to a competing subsidiary is likely to occur. Bruce's motion for a preliminary injunction will be denied.

I.   **Background Facts and Procedural History**

Since 1932, Bruce has operated a business as a licensee of Terminix[1] or its predecessor, providing pest control and related services. In 1975, Bruce and Terminix entered into the License Agreement, which grants Bruce the exclusive right to use the Terminix name and Terminix System in 17 North Carolina counties.

Terminix is a wholly-owned subsidiary of TGH. In 2018 and 2019, TGH's predecessor acquired companies that compete with Bruce within Bruce's service area. This lawsuit resulted. In December 2021, TGH announced that it would merge with Rentokil, another large pest control company. Rentokil owns at least one pest control company in Bruce's exclusive service area: Bruce's primary competitor, McNeely Pest Control. Bruce then filed a supplemental complaint seeking declaratory and injunctive relief, Doc. 58, along with a motion for a preliminary injunction. Doc. 59.

Specifically, Bruce seeks a declaratory judgment that TGH and Terminix are prohibited by the License Agreement from (1) merging with Rentokil or its subsidiaries, so long as Rentokil owns pest control companies with locations in Bruce's service area,

---

[1] For ease of reading, the Court will call Terminix International Company Limited Partnership and its predecessors "Terminix" and will call Terminix Global Holdings "TGH."

2

and (2) disclosing to Rentokil or its subsidiaries any confidential, proprietary, technical or trade secret information related to or part of the Terminix System. Doc. 58 at ¶ 31. In the pending motion, Bruce seeks a preliminary injunction prohibiting TGH and Terminix from doing these same acts: merging with Rentokil and disclosing the Terminix System to Rentokil and its subsidiaries, including McNeely. Doc. 59 at 2–3.

## II. Overview

The motion for preliminary injunction revolves around two questions. First, does Terminix breach the License Agreement if it allows itself to be sold to Rentokil because Rentokil owns and operates Bruce's competitors within Bruce's service area? Second, if it does not, does Terminix breach the License Agreement if it discloses the Terminix System to Rentokil or Rentokil's subsidiaries after the merger?

The License Agreement provides and the parties agree that Terminix cannot license another company to use the Terminix System or brand within Bruce's territory. The parties also agree that Terminix cannot authorize TGH to license those rights or to sell Rentokil those rights.[2] This makes sense: Terminix is the owner of the Terminix brand and System, but its rights are subject to limitations set forth in contracts, such as the License Agreement. TGH has no independent rights to the Terminix brand or System, so it cannot and does not have greater or different rights to the Terminix brand or System than Terminix. TGH, like Terminix, cannot sell or convey the right to use the Terminix brand or System within Bruce's territory, whether through merger, acquisition,

---

[2] Terminix and TGH acknowledged this point at oral argument. While they maintain that TGH has no contractual duties to Bruce, that point is not determinative.

3

franchise, or license. As far as the record shows, Rentokil also has no independent rights to the Terminix brand or System, so if the merger is completed, it will be subject to the same limitations. As is true now, Rentokil will have no right to operate competitors in Bruce's exclusive territory under the Terminix name or to license the competitors to use the Terminix System unless Terminix authorizes Rentokil to do so, and Terminix cannot give such rights to Rentokil without breaching the License Agreement.

The parties disagree over whether Rentokil's merger with the defendants in and of itself breaches the License Agreement. Bruce contends the License Agreement prohibits Terminix and any parent company from owning and operating any pest control businesses in Bruce's exclusive area, even if the businesses use neither the Terminix name nor the Terminix System. And, Bruce asserts, any entity acquiring or merging with Terminix is also prohibited from owning and operating competitors in Bruce's service area, even if those competitors are already in operation at the time of the merger.

The parties also disagree over whether Terminix and TGH may disclose the Terminix System to Rentokil. Bruce contends that if Terminix and TGH disclose the Terminix System to Rentokil, then Rentokil will disclose the Terminix System to McNeely and that both disclosures are prohibited by the License Agreement.

### III. Injunctive Relief

To obtain a preliminary injunction, a party must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm if the injunctive relief is denied; (3) the balance of equities tips in its favor; and (4) injunctive relief would be in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008);

4

*United States v. South Carolina*, 720 F.3d 518, 533 (4th Cir. 2013). "Satisfying these four factors is a high bar," *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017), *cert. denied*, 139 S. Ct. 67 (2018), as a preliminary injunction is "an extraordinary remedy involving the exercise of very far-reaching power." *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (cleaned up). A district court need not consider all four *Winter* factors if one is clearly absent. *See Henderson for NLRB v. Bluefield Hosp. Co.*, 902 F.3d 432, 439 (4th Cir. 2018).

A plaintiff must make a "clear showing" that it is likely to prevail at trial to demonstrate it is likely to succeed on the merits. *See Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part on remand*, 607 F.3d 355 (4th Cir. 2010). This does not require the plaintiff to show a "certainty of success," *Pashby*, 709 F.3d at 321, but it is a higher standard than a showing that serious questions are presented. *See Real Truth*, 575 F.3d at 346–47.

A plaintiff seeking preliminary injunctive relief must also show a likelihood of irreparable harm, not just a possibility. *See Winter*, 555 U.S. at 21–22; *Real Truth*, 575 F.3d at 347. The irreparable harm must be "neither remote nor speculative, but actual and imminent." *Scotts v. United Indus. Corp.*, 315 F.3d 264, 283 (4th Cir. 2002).

### IV. Findings of Fact for Purposes of the Pending Motion

Bruce, based in Greensboro, North Carolina, provides residential and commercial pest control services in 17 counties in western and central North Carolina. Doc. 1 at ¶¶ 1,

8–9;[3] *see* Doc. 1-1 at 20. Bruce has been a Terminix licensee since 1932, shortly after Bruce's founding, Doc. 1 at ¶ 9, and it is the only Terminix franchisee to operate in its service area for the last 90 years. *Id.* at ¶ 127. Bruce owns or leases 14 branch offices in its service area. *Id.* at ¶ 128.

Terminix owns the Terminix brand, which includes the Terminix name, Terminix trademarks, and confidential trade secrets related to the Terminix System. Doc. 1-1 at p. 5–6 § III. TGH is the corporate parent and 100% owner of Terminix. Doc. 17-1 at ¶ 3.

In 1975, Bruce renewed its License Agreement with Terminix.[4] The agreement, Doc. 1-1, remains in effect today and governs the relationship of the parties. Doc. 1 at ¶ 15. Throughout the License Agreement, the parties explicitly and implicitly recognize the value of the Terminix trademark, tradename, reputation, and goodwill, along with the value of the "Terminix System" and instructional materials for providing termite and pest control services. *See, e.g.*, Doc. 1-1 at pp. 4, 6 § III/C. There are numerous provisions in the License Agreement designed to maintain and protect those valuable assets. *See, e.g.*, *id.* at p. 6 §§ III/C/2, IV; p. 7 § V.

Under the License Agreement, Terminix authorizes Bruce to operate the "Terminix System," defined as the "experience, skill and special techniques and know-

---

[3] Burns Blackwell, the President of Bruce, has verified the complaint, Doc. 1 at 38, and the supplemental complaint. Doc. 58 at 14.

[4] The License Agreement was between Bruce and Terminix International. Doc. 1-1 at 4. The License Agreement allowed Terminix International to assign its rights, *id.* at p. 13 § XII/A, and the defendant Terminix International Limited Company Partnership (referred to herein as Terminix) is the successor in interest to the 1975 License Agreement. Doc. 1 at ¶ 16; *see* Doc. 60-1 at 3. The License Agreement is governed by Tennessee law. Doc. 1-1 at p. 17 § XX/A.

6

how in a business . . . of rendering termite and other pest control and related services and making available materials and equipment used therein," *id.* at 4, and to use the Terminix tradename and marks. *Id.* at p. 5 § III/A. With one exception for pest control services offered by Sears,[5] Bruce has the exclusive right to operate the Terminix System in a service area of 17 counties in western and central North Carolina. *Id.* at 20. Specifically, Terminix agreed that it "will not itself establish, nor will it license another to establish, within the [service area], a location from which to operate a Terminix System," *id.* at p. 9 § VII/A, and that it "will not license another to establish, nor will [Terminix] itself establish, within the [service area], a location from which to operate a business similar to the Terminix System, under a name other than TERMINIX." *Id.* at p. 9 § VII/B.

Bruce also has substantial obligations under the License Agreement. Among other things, Bruce agrees to pay Terminix a monthly "service fee," and a "contract fee," *id.* at p. 10 § VIII, to follow Terminix's standards, to only use chemicals approved by Terminix, *id.* at p. 8 § VI, and to make its facilities and records available to Terminix for inspection. *Id.* at p. 11 § IX.

In 1986, ServiceMaster, a holding company with various residential and related services in its portfolio, acquired Terminix. Doc. 1 at ¶ 32; Doc. 17 at 4. ServiceMaster operated the Terminix brand along with other franchise-based service companies, such as Merry Maids. Doc. 1 at ¶ 33. ServiceMaster acquired any of its rights to the Terminix

---

[5] Under the exception, Terminix can establish a location within the service area "under Sublicense of Sears, Roebuck & Co." but only if Bruce declines to exercise its right of first refusal. *See* Doc. 1-1 at p. 9 § VII/B.

brand and Terminix System from Terminix, so ServiceMaster, which is now TGH, had no greater rights to the Terminix brand and System than Terminix.

Beginning around 2018, ServiceMaster began to expand its pest control business. *Id.* at ¶ 55. ServiceMaster's 2019 Annual Report announced the completion of "32 acquisitions at Terminix," with the aim of "increasing the breadth of [their] service offerings to strengthen [their] capabilities in commercial pest control." *Id.* at ¶ 57. Terminix was then the dominant brand in ServiceMaster's portfolio, accounting for 87% of its total revenues in 2019. *Id.* at ¶ 54.

A ServiceMaster subsidiary acquired a national pest control service network, Copesan, in 2018. Doc. 17-1 at ¶ 6. Bruce alleges that it competes in its service area against pest control companies within Copesan's network. Doc. 1 at ¶¶ 59–60. In 2019, ServiceMaster acquired Gregory Pest Solutions, a pest control company based in Greenville, South Carolina, that operates in Bruce's service area. Doc. 17-1 at ¶ 7; Doc. 60-2 at 5; Doc. 1 at ¶ 68. Gregory uses some Terminix-branded products and equipment, Doc. 1 at ¶ 71, and has used the Terminix logo on customer service tickets. Doc. 60-3 at 2–4. Also in 2019, ServiceMaster worked to acquire McNeely, Bruce's main competitor, but the sale did not go through. Doc. 1 at ¶¶ 82–84, 89–91; Doc. 32 at ¶ 82, 88.

By October 2020, ServiceMaster had changed its name to Terminix Global Holdings (TGH) and had sold all its brands other than Terminix. Doc. 1 at ¶¶ 4, 99–100. As was true when it operated as ServiceMaster, any rights TGH has to use, sell, or license the Terminix brand and the Terminix System were acquired through Terminix, so TGH has no greater rights to the Terminix brand and System than Terminix.

8

In December 2021, over a year after Bruce filed this suit, TGH announced it would be merging with Rentokil, one of the largest pest control companies in the world. Doc. 58 at ¶ 2. Although billed as a merger, a wholly-owned Rentokil subsidiary, Rentokil Initial US Holdings, will acquire TGH. Doc. 58-4 at 2; Doc. 65 at ¶ 14. The transaction is expected to close later this year. Doc. 58 at ¶ 15.

Rentokil and TGH intend to fully integrate into one company following the merger. Doc. 58-8 at 2. As a result of the integration, Rentokil and TGH will combine branches, including IT infrastructure and service routes, and will share best practices. Doc. 58-3 at 3–5. Rentokil and TGH will develop staff together, working to "recruit, train, and retain" their employees more effectively. Doc. 58-4 at 4. Once the merger is complete, Rentokil will pay salaries and benefits to former TGH employees. Doc. 58-1 at p. 46–47 § 7.05.

Rentokil is headquartered in the United Kingdom, but it has a significant presence in the United States through its wholly-owned subsidiaries. Doc. 58 at ¶ 5; Doc. 58-1 at 2. In 2020, Rentokil acquired McNeely, Bruce's primary competitor. Doc. 58 at ¶¶ 8–9; Doc. 62 at 5–6.

## V. Conclusions of Law

Bruce's underlying claim at issue here is for a declaratory judgment that the merger between Rentokil and TGH will breach the License Agreement and that the License Agreement prohibits TGH and Terminix from disclosing the Terminix System to Rentokil and its subsidiaries. Doc. 58 at 12. To obtain a preliminary injunction prohibiting the merger and prohibiting disclosure, Bruce must show it is likely to succeed

9

on the merits of its declaratory judgment claim; irreparable harm if injunctive relief is denied; the balance of equities tips in its favor; and injunctive relief is in the public interest. *See Winter*, 555 U.S. at 20; *South Carolina*, 720 F.3d at 533.

### A. The Merger

In the Supplemental Complaint, Bruce seeks a declaratory judgment that a merger between TGH and Rentokil will be a breach of the License Agreement. Doc. 58 at 12. It seeks a preliminary injunction to prevent that merger. Doc. 59 at 2–3.

The License Agreement prohibits Terminix from "establish[ing]" or "licens[ing] another to establish, within [Bruce's service area], a location from which to operate a Terminix System" or "a location from which to operate a business similar to the Terminix System, under a name other than Terminix." Doc. 1-1 at p. 9 § VII/A and B. Everyone agrees that Terminix is prohibited from establishing businesses that use the actual Terminix System or that use the Terminix name in Bruce's territory.

And Bruce is likely to succeed on a claim that Terminix would breach the License Agreement if it established a business in Bruce's service area that uses similar methods for pest control as the Terminix System, even if the business does not use the actual System or name. The License Agreement says so, and the parties understood this to be part of the agreement for many years; neither Terminix nor a parent company acquired or operated a pest control business that operated within Bruce's service area from 1975, when they signed the License Agreement, until 2018. *See id.* at 4, 18; Doc. 17-1 at ¶ 6. Multiple provisions within the License Agreement support the interpretation that Terminix would "establish" a pest control business in breach of the License Agreement if

10

it acquired and operated an already-existing pest control business within Bruce's service area. *See, e.g.*, Doc. 1-1 at p. 9 § VII/B (the "Sears provision"); *id.* at p. 9 § VI/G (the arbitration provision). Contrary to the defendants' contention, Doc. 62 at 16, a pest control business need not use Terminix's proprietary business methods to be "similar to the Terminix System."[6]

But Bruce is unlikely to succeed on the merits of its claim that this provision prohibits Terminix from merging with or being acquired by a company or entity that already operates a competing business in Bruce's territory. The License Agreement contains no provision that Terminix may not be acquired by another company that already operates competing businesses within Bruce's service area. As far as the Court knows, Rentokil currently has the right to own or operate such a business, and there is no evidence that Terminix will assign the License Agreement to Rentokil. Such an acquisition does not threaten Bruce's exclusive territory, as it does not create new competition. Bruce competes with McNeely now and Bruce will compete with McNeely after the merger. And through the merger, Terminix is not itself competing with Bruce because Terminix will not be acquiring pest control companies in Bruce's territory nor assigning its License Agreement with Bruce to Rentokil. The License Agreement protects Bruce from competition by Terminix, but not from all competition.[7]

---

[6] The Court need not sort out the corporate formality issues raised by Bruce's initial complaint about the 2018 acquisition in order to resolve the pending motion.

[7] Bruce has legitimate concerns that TGH and Rentokil, the holding companies that own or will own Terminix, will acquire or open new businesses that compete with Bruce in its territory,

11

Bruce contends that by merging with Rentokil, Terminix is effectively licensing Rentokil to provide the Terminix brand and System to McNeely, Bruce's competitor. But there is no credible evidence to support an implied license to Rentokil. Even if there were, the license could not give Rentokil greater rights than Terminix has, and as discussed *supra*, neither one has or will have rights allowing it to operate Bruce's competitors in a manner that threatens Bruce's exclusive right to the use of the Terminix brand and System within its defined territory.[8]

Bruce also fears that Terminix or TGH will license the Terminix System to Rentokil after the merger and that Rentokil will incorporate the System into the operations of McNeely. *See* Doc. 60 at 17; Doc. 71 at 1. Any such licensure and its hypothetical terms are entirely speculative. Otherwise, this concern revolves around

---

something Terminix cannot do under the License Agreement. The evidence shows that TGH has already done so, *see, e.g.*, Doc. 17-1 at ¶ 7, and those acts are the subject of the original complaint. Nothing else appearing, such acquisitions or new enterprises would not seem to be the basis for a breach of contract claim against either TGH or Rentokil, since neither are parties to the License Agreement. Whether such actions by TGH or Rentokil would give rise to other claims depends on the facts. As discussed *infra*, there would be problems for TGH or Rentokil if they purport to authorize one of Bruce's competitors to use the Terminix name, brand or System, since they do not themselves own such rights. TGH's reliance on its status as a separate corporate entity to avoid breach of contract liability and its concomitant rejection of that status to avoid liability when it acts as if it were Terminix makes no sense. That said, the availability of other claims against TGH is outside the scope of the pending motion.

[8] In the merger agreement, TGH promises Rentokil that there "exist no restrictions on the disclosure, use, license or transfer of" TGH's intellectual property. Doc. 58-1 at p. 31 § 4.19(b). "Intellectual property" is defined to include, *inter alia*, TGH's trademarks and logos, copyrights, and "trade secrets and industrial secret rights, and rights in know-how, data and confidential or proprietary business or technical information." *Id.* at p. 12 § 1.01. It thus appears to include the Terminix System. This representation by TGH to Rentokil seems inaccurate, since, as the Court has said repeatedly and as the parties agree, TGH has no rights to use the Terminix trademark or System within Bruce's territory independent of Terminix's rights, which are restricted by the License Agreement.

12

whether Rentokil's prospective disclosure of the Terminix System to Bruce's competitors and, implicitly, the competitors' use of the System, violates the License Agreement, discussed *infra*, not whether Terminix is contractually prohibited from being acquired by Rentokil.

Bruce has not shown that it is likely to succeed on the merits of its claim for a declaratory judgment that TGH and Terminix are prohibited from merging with Rentokil while Rentokil owns and operates a competitor within Bruce's service area. This aspect of the motion for preliminary injunction will be denied.

### B. Disclosure

In the Supplemental Complaint, Bruce seeks a declaratory judgment that Terminix's disclosure of the Terminix System to Rentokil or its subsidiaries will be a breach of the License Agreement. Doc. 58 at 12. It seeks a preliminary injunction to prevent any such disclosure. Doc. 59 at 2.

Rentokil is essentially a holding company and is not itself in the business of providing pest control and related services in Bruce's territory. *See* Doc. 58-1 at 2; Doc. 58 at ¶ 5. Bruce is therefore unlikely to succeed on the merits of its claim that disclosure of the Terminix System to a corporate parent would on its own breach the License Agreement.

Bruce is likely to succeed on its claim that disclosure of the Terminix System to McNeely or any other Rentokil subsidiary that competes in Bruce's territory would breach the License Agreement. But there is insufficient evidence that this disclosure is so likely to occur that Bruce will be irreparably harmed if an injunction does not issue.

13

### 1. Disclosure to Rentokil

As noted *supra*, the License Agreement prohibits Terminix from "licens[ing] another to establish," within Bruce's service area, "a location from which to operate a Terminix System," Doc. 1-1 at p. 9 § VII/A, as defined in the Agreement. *Id.* at 4. Terminix considers aspects of its System to be confidential and Bruce must treat it as such. *See, e.g.*, *id.* at p. 6 § IV; p. 7 § V. The License Agreement, however, does not prohibit Terminix from disclosing the Terminix System to a corporate parent holding company that does not itself directly compete within Bruce's service area.[9] That is exactly what Rentokil will be following the merger, and Bruce has pointed to no authority prohibiting a company from disclosing trade secrets or assets to its holding company, with appropriate protections in place.[10]

Nothing in the License Agreement prohibits Terminix from disclosing the Terminix System to a holding company that does not itself compete with Bruce, and Bruce is not likely to succeed on the merits of its claim for a declaratory judgment that

---

[9] This assumes, as seems obvious, that Terminix has no reason to believe the holding company will misuse this information in a way that would breach Terminix's contractual obligations to others, such as Bruce.

[10] *See generally Hickory Specialties, Inc. v. B & L Lab'ys, Inc.*, 592 S.W.2d 583, 587 (Tenn. Ct. App. 1979) (noting general requirement under Tennessee law that trade secrets must be secret or they are not trade secrets); *Knox Trailers, Inc. v. Clark*, No. 20-CV-137, 2021 WL 2043188, at *7 (E.D. Tenn. May 21, 2021) (noting Tennessee's trade secrets statute provides that purportedly confidential information must be protected by secrecy measures that are "reasonable under the circumstances"); *see also Steinberg Moorad & Dunn, Inc. v. Dunn*, No. 01-CV-07009, 2002 WL 31968234, at *24 (C.D. Cal. Dec. 26, 2002) (holding under California law that a parent corporation's public disclosure of alleged secret information was a factor in finding the information was not a trade secret).

such a disclosure by itself breaches the License Agreement. This aspect of the motion for preliminary injunction will be denied.

### 2. Disclosure to Rentokil Subsidiaries

Bruce also seeks a declaratory judgment that Terminix will breach the License Agreement if it discloses any confidential, proprietary, technical or trade secret information related to the Terminix System to Rentokil's subsidiaries. Doc. 58 at 12. It seeks a preliminary injunction to prevent that disclosure as well. Doc. 59 at 2–3.

Rentokil is acquiring all of TGH's rights, including any rights to the Terminix brand and System that TGH may indirectly hold through its ownership of Terminix. But it is not acquiring any greater rights than Terminix has. In other words, and to state the obvious, to the extent Terminix cannot act in a proscribed way in Bruce's territory, neither can Rentokil. *See* discussion *supra*.

Under the License Agreement, Terminix may not disclose confidential information related to the Terminix System to a pest control business within Bruce's service area. *See* Doc. 1-1 at p. 9 §§ VII/A, VII/B. It cannot breach these provisions directly, and it cannot give permission to a corporate parent holding company to breach those provisions either. *See* discussion *supra* and note 9. The defendants acknowledge and agree that TGH and, after the merger, Rentokil, have no right to disclose confidential information related to the Terminix System to any other pest control business within Bruce's service area, including McNeely. To the extent Bruce's seeks a declaratory judgment that Terminix and any parent company may not disclose the Terminix System to Bruce's competitors within Bruce's service area, it is likely to succeed on the merits of its claim.

15

Bruce, however, has not shown a likelihood of irreparable harm if the Court does not issue the injunction because its evidence of disclosure to McNeely is, at this point, speculative. McNeely is a fully operational pest control business that already competes with Bruce without using the Terminix name, brand, or System. There is no evidence that McNeely is not profitable or that it needs access to the Terminix name, brand, or System to remain viable. To the extent McNeely can be made more profitable, Rentokil could share information from the other apparently profitable non-Terminix pest control businesses it already owns. There is no clear evidence that Rentokil will convert McNeely to a Terminix franchise or turn over information about the Terminix System to McNeely. Bruce has not provided evidence that the status quo will likely be affected by the way Rentokil operates McNeely following the merger.

Bruce points to evidence that Rentokil and TGH intend to fully integrate "to create one exceptional company," Doc. 58-8 at 2, and will "shar[e] best practices," Doc. 58-3 at 4, but it has not offered specifics about what that integration will entail, when it will happen, or whether that integration includes disclosure of the Terminix System to competitors within Bruce's territory. *See* Doc. 58 at ¶ 22. While it is possible that Rentokil will disclose the System to McNeely, possibility is not enough for a preliminary injunction; Bruce must show a likelihood of actual and imminent irreparable harm. *See Winter*, 555 U.S. at 21–22; *Scotts*, 315 F.3d at 283.

The issue can be resolved at trial without harm to the status quo. If before then Rentokil takes steps toward allowing competitors within Bruce's service area to use the Terminix name or toward disclosing the Terminix System to them, Bruce may seek relief

16

at that point. But as of now, Bruce has not shown it will likely sustain irreparable harm if the proposed injunctive relief is not issued.

## VI. Motion for Leave to File Declaration

After briefing and oral argument, defendants sought leave to file a declaration by John Myers, President and CEO of Rentokil North America, Inc. Doc. 73. Bruce opposes the motion. Doc. 74. The defendants have not explained why they could not and did not obtain and file this evidence earlier, and the motion will be denied.

Federal Rule of Civil Procedure 6(c)(2) states that "any opposing affidavit must be served at least 7 days before the hearing, unless the court permits service at another time."[11] While a district court may in its discretion consider late documents in support of a motion, such exceptions are generally only appropriate when the movant shows good cause or excusable neglect. *See Orsi v. Kirkwood*, 999 F.2d 86, 91 (4th Cir. 1993) (collecting cases); *see also Aldridge v. Marion Cnty. Coal Co.*, No. 17-CV-79, 2017 WL 3446530, at *5–6 (N.D. W. Va. Aug. 10, 2017). The Local Rules allow for an extension of time to file supporting documents with a response brief but only if it is shown the documents cannot be filed contemporaneously with the brief. LR 7.3(f), (g).

The defendants have not shown good cause or excusable neglect to justify their late filing. Rentokil's conduct after the merger has been at issue since Bruce filed the supplemental complaint and Bruce filed the pending motion several months ago; the

---

[11] Fed. R. Civ. P. 6(c)(2) only refers to "affidavits" but it applies to other documents in support of a motion, such as declarations. *See Masters v. Lin*, No. 14-CV-2473, 2015 WL 12830505, at *6 (D.S.C. Jan. 23, 2015).

17

defendants could have offered the declaration with their response briefing or shortly thereafter. Allowing the late filing would also prejudice Bruce, which could not respond to the declaration in reply briefing or at the hearing or depose Mr. Myers before the pending motion was submitted. That the declaration would be helpful to the Court does not establish good cause or excusable neglect for failure to comply with filing deadlines. In any event, even if the Court considered the declaration in full, it would not change the outcome of this motion.

## VII. Conclusion

Right now, Bruce competes against McNeely within Bruce's service area. After the Rentokil and TGH merger, that will still be the case. Bruce has not shown it is likely to succeed on the merits of its claims that Terminix breaches the License Agreement by merging with Rentokil and by disclosing the Terminix System to Rentokil. So long as Terminix honors its contractual obligations within Bruce's service area not to license or allow to be licensed another Terminix franchise, not to disclose or allow to be disclosed the Terminix System to a competitor or other entity likely to use it in violation of Terminix's obligations to Bruce, and not to establish new competing businesses that use some of the Terminix System, then Bruce is not harmed. Bruce's motion for a preliminary injunction will be denied.

It is **ORDERED** that:

1. The plaintiff's second motion for preliminary injunction, Doc. 59, is **DENIED**; and

18

2. The defendants' motion for leave to file the declaration of Mr. Myers, Doc. 72, is **DENIED**.

This the 1st day of August, 2022.

_____
UNITED STATES DISTRICT JUDGE