IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BRUCE-TERMINIX COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE TERMINIX INTERNATIONAL )<br>COMPANY LIMITED )<br>PARTNERSHIP and TERMINIX )<br>GLOBAL HOLDINGS, INC., )<br>)<br>Defendants. ) | 1:20-CV-962 |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The matter is before the Court on cross-motions for summary judgment in this business dispute arising from an alleged breach of contract. There are no undisputed material facts and a trial is not necessary.

## I.     The Undisputed Facts

The record shows the following undisputed facts.

In 1975, Terminix International, Inc. (TII) held all rights to the Terminix name, brand, and pest control system known as the Terminix System. No other entity at that time or at any later time through the present had or has any rights to use the Terminix name, brand, or system other than through TII. All parties to this litigation and their subsidiaries and related entities acquired their rights to use or license the Terminix name, brand, and system through TII.

Also in 1975, Bruce and TII entered into a valid contract that gives Bruce an exclusive license to use the Terminix name, brand, and system in 17 counties in North Carolina. *See* Doc. 1-1 at 4–5, 9, 20; Doc. 86 at ¶¶ 3–4. The License Agreement allowed TII to assign its rights, Doc. 1-1 at 13 § XII/A, and the defendant Terminix International Company Limited Partnership (Terminix) is the successor in interest to TII's rights and obligations under the 1975 License Agreement. *See* Doc. 60-1 at 3. Terminix is bound by this contract, and in material part so are all its successors, assignees, and related entities: none of them have any rights to the Terminix name, brand, or system except through TII and Terminix.

Under the License Agreement, Terminix agreed that it "will not itself establish, nor will it license another to establish, within [Bruce's service area], a location from which to operate a Terminix System," Doc. 1-1 at 9 § VII/A, and that it "will not license another to establish, nor will [Terminix] itself establish, within [Bruce's service area], a location from which to operate a business similar to the Terminix System, under a name other than TERMINIX." *Id.* at 9 § VII/B.[1] The License Agreement defines the Terminix System to include the "experience, skill and special techniques and know-how in a business . . . of rendering termite and other pest control and related services." *Id.* at 4. Throughout the License Agreement, the parties explicitly and implicitly recognize the value of the Terminix trademark, tradename, reputation, and good will, along with the

---

[1] There was one exception related to Sears, but even then Bruce had a right of first refusal. Doc. 1-1 at 9 § VII/B.

value of the Terminix System and instructional materials for providing termite and pest control services. *See, e.g.*, Doc. 1-1 at 4, 6 § III/C.

In 1986, ServiceMaster acquired Terminix. Doc. 89-1 at ¶ 2. Later, it reorganized into the following corporate structure: ServiceMaster is now known as Terminix Global Holdings, Inc. (TGH), *id.* at ¶ 13; TGH is the ultimate parent company of The Terminix Company, LLC; The Terminix Company, LLC wholly owns TMX Holdco, Inc.; and The Terminix Company, LLC and TMX Holdco, Inc. are the corporate partners of Terminix. Doc. 90-5; Doc. 88-2 at 4.

Between 1975 and 2018, neither Terminix nor any related entity owned by its parent company operated another pest control business in Bruce's exclusive territory. In 2018 and 2019, ServiceMaster, acting through subsidiaries, acquired two entities involved in pest control: Copesan and Gregory Pest Solutions. Doc. 89-1 at ¶¶ 3–5; *see* Doc. 90-5. Gregory and Copesan are now wholly owned by TMX Holdco, Inc. Doc. 88-2 at 4; *see* Doc. 90-5.

Copesan is a management company that contracts with local pest control providers to provide pest control services to Copesan's customers. Doc. 89-1 at ¶ 8. It targets customers within Bruce's service area, Doc. 88-18 at 13,[2] and neither TGH nor Terminix has told Copesan's salespeople that there are sales restrictions within Bruce's service area. *Id.* at 13–14. To some extent, Copesan works with "national accounts" on behalf of

---

[2] The Court has used the pagination appended by the CM-ECF system for this and other deposition cites, not the internal pagination used by the court reporters transcribing the deposition.

Terminix, *id.* at 6–7, 17–18; these are Terminix accounts for commercial customers with properties in multiple locations like chain stores. Doc. 88-17 at 12–13; Doc. 86 at ¶ 16. At least one Terminix employee who works with national accounts lists "Terminix/Copesan" in her email signature block. *See* Doc. 88-12 at 2 (showing email from National Account Executive of Terminix with co-branded signature block); Doc. 88-18 at 8 (noting the National Account Executive manages national accounts). Other Copesan salespeople have cobranded email signature blocks, *see* Doc. 88-18 at 17, but there is no evidence that they have used the cobranded signature blocks in Bruce's exclusive territory to service non-national account customers.

Copesan has, however, used the Terminix brand in Bruce's territory at least once by copying and modifying the terms of a proposal by Bruce to a potential non-national account customer and resubmitting it to that customer under the name of "Copesan/Terminix." Doc. 86 at ¶ 27; *see* Doc. 86-11 at 5–19 (comparing the two proposals). Bruce notified Terminix that Copesan used the Terminix name within Bruce's exclusive territory, Doc. 86 at ¶ 28, *see* Doc. 86-11 at 2–3, but Terminix refused to make Copesan withdraw the bid. Doc. 86 at ¶ 28; *see* Doc. 86-12 at 2.

Before it was acquired by ServiceMaster, Gregory provided pest control services to customers throughout the southeastern United States. Doc. 89-1 at ¶ 4. Gregory no longer exists outside of the Carolinas; it has become part of the Terminix brand. *See* Doc. 88-19 at 13–14. While Gregory does not own or lease a physical location within Bruce's exclusive territory, Doc. 89-1 at ¶ 11, Gregory employs technicians who provide services to customers within Bruce's exclusive territory. Doc. 88-2 at 6–9; *see* Doc. 89-1

4

at ¶ 4. And when Copesan makes a sale in Bruce's service area, Gregory provides the services. Doc. 88-18 at 14.

Terminix handles Gregory's recruiting needs and screens applicants for employment. Doc. 88-19 at 19–20. Gregory has used the Terminix name in job postings at least twice within Bruce's exclusive territory. Doc. 86 at ¶¶ 23–24; Doc. 88-16 at 40, 43–44; Doc. 88-19 at 20; *see* Doc. 86-6 (July 2022 post advertising that Gregory employees will "be the face of Terminix to [the] local community"); Doc. 98-1 at ¶¶ 4–8 (discussing similar post in January 2023).[3]

Once hired, Gregory employees have access to Aspire, which is Terminix's confidential training program, *see* Doc. 88-19 at 11, 26, Doc. 88-16 at 27, Doc. 86 at ¶¶ 6–9, and to Terminix Nation which is the "intranet site for Terminix" and contains sales, marketing, and other training materials. Doc. 88-16 at 16–17, 35–36. Gregory also has access to the benefits of "Terminix fleet deals and services." Doc. 88-19 at 12. Gregory uses Terminix's four-step tick treatment method, the Tick Defend System, with "Gregory-branded marketing materials." Doc. 88-16 at 32–35, 37–38; *compare* Doc. 88-10 at 15 (Terminix's Tick Defend System), *with* Doc. 88-11 at 3 (Gregory's Tick

---

[3] Bruce moved to supplement the record to include this declaration from Burns Blackwell. Doc. 98. The Court will grant the motion. *See* Fed. R. Civ. P. 56(e)(1) ("If a party fails to properly support an assertion of fact, . . . the court may . . . give an opportunity to properly support or address the fact."). The defendants contend that the declaration is cumulative because it discusses a job posting that is "materially identical" to a job posting already in the record. Doc. 100 at 2–3 (citing Doc. 86-6). The evidence is not cumulative because it shows that Gregory is continuing to use the Terminix name. There is good cause for the delay because Bruce only recently discovered the evidence. The defendants have had an opportunity to respond to the evidence. *See* Docs. 100, 100-1.

5

Defend System).  All of these materials, methods, and information are part of the Terminix System.

Some Gregory employees have used the Terminix name in internal emails. *See* Doc. 88-18 at 20, 23; Doc. 88-19 at 5, 8 (noting Ben Walker, an executive of Terminix and president of Gregory, has a cobranded signature block); *see* Doc. 88-8 at 2; Doc. 88-9 at 2. But there is no evidence that they have used the cobranded signature blocks in communications with customers or potential customers in Bruce's exclusive territory.

In January 2020, Terminix told Bruce that "Bruce would no longer service national accounts" for Terminix. Doc. 86 at ¶ 18. Terminix relies on local providers when national account customers have locations in areas where Terminix does not have a location. Doc. 89-1 at ¶ 12. National accounts are not addressed in the License Agreement, Doc. 86 at ¶ 17, but Terminix historically asked Bruce to service its national accounts in Bruce's territory. Doc. 89-1 at ¶ 12; Doc. 86 at ¶ 16. Bruce consented to the transition while reserving its other rights under the Agreement. Doc. 86 at ¶¶ 20–21; Doc. 86-5. Now, Gregory services Terminix's national accounts within Bruce's exclusive territory. Doc. 60-2 at 5; *see* Doc. 89-5 (email notifying national account customer of the change).[4]  And when it does, it uses the Terminix name. *See* Doc. 60-3 (Gregory service inspection report for a national account using Terminix and Copesan branding).

---

[4] While the details are not completely clear from the record, both Gregory and Copesan have some role in handling these national accounts. The national accounts are entirely commercial. Doc. 88-18 at 10.

Case 1:20-cv-00962-CCE-JLW   Document 108   Filed 03/01/23   Page 6 of 22

In October 2020, ServiceMaster changed its name to TGH. Doc. 89-1 at ¶ 13.

In December 2021, TGH announced that it would merge with Rentokil Initial PLC (Rentokil).[5] Doc. 58 at ¶ 2.[6] "Rentokil is a worldwide pest control company headquartered in the United Kingdom" and has "a significant presence in the United States" through its subsidiaries. *Id.* at ¶ 5. Rentokil owns Rentokil North America, Doc. 89-1 at ¶ 1, which runs Rentokil's operations in the United States. Before the merger, Rentokil Initial acquired other pest control companies that compete with Bruce in the service area: McNeely, Ehrlich Pest Control, and Bug Out. *See id.* at ¶ 20; Doc. 58 at ¶¶ 8–11; Doc. 86 at ¶ 34.

Rentokil and TGH finalized the merger in October 2022, Doc. 89-1 at ¶ 1, after discovery closed. *See* Doc. 79 (modifying the scheduling order and setting discovery deadlines). Rentokil Initial now owns McNeely, Ehrlich, Bug Out, Terminix, Gregory, and Copesan. *See* Doc. 89-1 at ¶¶ 6, 20. The Rentokil companies "have rebranded themselves as 'Rentokil Terminix.'" Doc. 86 at ¶ 33; *see also* Doc. 89-1 at ¶ 23; Doc. 86-14 at 2 (announcing that the "Rentokil and Terminix family of brands are coming together to form the world's leading pest control company").

Use of the Terminix name, brand, and system by TGH, Copesan, Gregory, Bug Out, McNeely, Ehrlich, and Rentokil is with permission and authorization of Terminix.

---

[5] Although branded as a merger, Rentokil acquired TGH. *See* Doc. 58-4 at 2.

[6] The President of Bruce verified the supplemental complaint. Doc. 58 at 14. Complaints verified on personal knowledge are "the equivalent of an opposing affidavit for summary judgment purposes." *Carawan v. Mitchell*, 400 F. Supp. 3d 371, 388 (W.D.N.C. 2019) (citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)).

## II. Breach of Contract Claim Against Terminix

Terminix and Bruce each move for summary judgment on the breach of contract claim. Docs. 83, 85. Each motion will be granted in part and denied in part.

### A. The Evidence Is Undisputed That Terminix Has Breached the Contract in Some Ways But Not in Others

To prove a breach of contract under the applicable Tennessee law, *see* Doc. 1-1 at 17 § XX/A, Bruce must "prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Highlands Physicians, Inc. v. Wellmont Health Sys.*, 625 S.W.3d 262, 303 (Tenn. Ct. App. 2020).

#### 1. The Acquisitions of Gregory and Copesan Are Not a Breach

Terminix did not breach the License Agreement by acquiring Gregory or Copesan because Terminix did not acquire these companies; its parent company, TGH, did. The License Agreement prohibits Terminix from establishing a location from which to operate a Terminix System or a business similar to the Terminix System. It does not prohibit Terminix's parent company from acquiring a competing pest control business in Bruce's exclusive territory.

#### 2. Terminix Breached by Authorizing Gregory to Use the Terminix System

The License Agreement prohibits Terminix from licensing another entity to establish a location from which to operate a Terminix System. Terminix breached the License Agreement by providing Gregory access to the Terminix System, effectively

8

licensing TGH to establish a location within Bruce's exclusive territory from which to operate a competing Terminix System.

The evidence is undisputed that Gregory operates within Bruce's exclusive territory; indeed, it does not exist outside the Carolinas and has been folded into the Terminix brand elsewhere. *See* Doc. 88-19 at 13. It has access to the Aspire training program and the Terminix Nation intranet site; it uses Terminix's Tick Defend System; and it has access to Terminix's fleet management resources. *See supra* pages 5–6.[7] These are all part of the Terminix System.

Terminix contends this is not a breach because it did not directly acquire Gregory; ServiceMaster did. Doc. 89 at 14–15. But acquisition is not the only issue; use of the Terminix name, brand, and system is also at issue. It is undisputed that Gregory's use of the Terminix name, brand, and system is with permission, and the permission must come from Terminix, even if it flows or flowed through any number of other corporate entities. TGH has no greater rights to the Terminix brand and system than Terminix, and TGH cannot give permission to Gregory to use them absent authorization from Terminix. Terminix is contractually prohibited from doing this in Bruce's exclusive territory. In other words, Terminix cannot license or otherwise authorize TGH to do what Terminix itself cannot do without violating the License Agreement. *See* Doc. 1-1 at 9 § VII/A.

Terminix contends this is not a breach because Gregory's business model of employing technicians in the service area and lack of a physical office does not fall

---

[7] There are disputed facts about the extent of the breach. In view of the Court's conclusion on actual damages, *see infra* pages 12–16, this dispute is not material.

within the contractual meaning of "establish a location." Doc. 89 at 13–16. But the four corners of the contract show the purpose of this and other provisions in of the License Agreement: to protect Bruce from competition by Terminix within Bruce's exclusive territory. The parties' conduct for the next forty-plus years confirms this; from 1975 to 2018, neither Terminix nor a parent entity acquired or operated pest control businesses that provided services within Bruce's exclusive territory in any manner. Terminix's interpretation ignores the clear purpose of the License Agreement and the parties' actions in carrying out the contract. *See Village E. Ass'n, Inc. v. Lamb*, No. 17-CV-2275, 2018 WL 4492736, at *2 (Tenn. Ct. App. Sept. 19, 2018).

Terminix contends the Court cannot interpret "ambiguous contractual language against the nonmoving party on summary judgment." Doc. 89 at 23 (quoting *W.C. Eng., Inc. v. Rummel, Klepper & Kahl, LLP*, 934 F.3d 398, 405 (4th Cir. 2019)). But "[a] contract is not ambiguous merely because the parties have different interpretations." *Fisher v. Revell*, 343 S.W.3d 776, 779 (Tenn. Ct. App. 2009). Terminix's interpretation is not reasonable because it ignores the overall context of the License Agreement, the expectations of the parties at the time of the drafting, and the parties' actions in performing the contract. *See Village E. Ass'n*, 2018 WL 4492736, at *2.

### 3. Transitioning National Accounts Is Not a Breach

Terminix did not breach the License Agreement by using providers other than Bruce on its national accounts. The evidence is undisputed that Bruce consented to this transition. *See supra* page 6.

10

#### 4.  Merging with and Disclosing to Rentokil Is Not a Breach

TGH's merger with Rentokil was not a breach because the License Agreement does not prevent Terminix or its parent company from merging with or being acquired by a company that already operates a competing business in Bruce's territory.

Nor does the License Agreement prohibit Terminix from disclosing its confidential information, including the Terminix System, to other entities, so long as those entities do not operate and use the Terminix System in Bruce's territory. Terminix has not breached the License Agreement merely by disclosing the Terminix System to Rentokil.

#### 5.  Integration of TGH and Rentokil Is Not A Breach

Bruce contends that the planned integration of TGH and Rentokil "will or already has violated the License Agreement." Doc. 88 at 24. But the integration of TGH and Rentokil, without more, is not a breach because the License Agreement does not prohibit Terminix or its parent company from integrating with another entity and sharing the Terminix System. The License Agreement only prohibits Terminix from authorizing the use of the Terminix name, brand, or system to any Rentokil subsidiary that provides pest control services within Bruce's exclusive territory.

Here, Bruce provides evidence that Rentokil North America "provides pest control services" in Bruce's exclusive territory "through several registered DBAs or fictitious names" such as "McNeely Pest Control, Ehrlich Pest Control, and Bug Out." Doc. 88-15 at 9–10. These operations are not a breach of the License Agreement so long as Terminix does not provide Rentokil with permission for Rentokil's operators within Bruce's

11

territory to use the Terminix name, brand, or system. Bruce provides no evidence that Terminix has granted this permission to Rentokil or that McNeely, Ehrlich, or Bug Out are using the Terminix name, brand, or system in Bruce's exclusive territory.

### 6. Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction" a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Declaratory relief can be sought to resolve contract disputes" about the "construction of disputed contract terms." *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605, 613 n.6 (4th Cir. 2021). Bruce is entitled to a declaratory judgment concerning the meaning of the disputed contract language consistent with the Court's conclusions herein, in a form to be finalized after further consultation with the parties.

### B. Bruce Has Not Presented Any Evidence of Monetary Damages and Will Be Limited to Nominal Damages, Declaratory Relief, and Injunctive Relief

Terminix moves for summary judgment on the breach of contract claim, contending that Bruce has offered no proof of damages. Doc. 83; Doc. 84 at 14–23. Terminix's motion for summary judgment on the breach of contract claim for actual damages will be granted in part because Bruce's evidence of actual damages comes only from a witness whose testimony is insufficient under Tennessee law to prove those damages. It will be denied in part because Bruce has shown breach and actual

12

non-quantified harm and is therefore entitled to nominal damages, declaratory relief, and potentially injunctive relief for the breach.

While the amount of damages is a question of fact, "the proper measure of damages is a question of law to be decided by the court." *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 228 (Tenn. Ct. App. 2006) (cleaned up). For breach of contract, damages are "payment in money for actual losses caused by the breach." *Reitz v. City of Mt. Juliet*, No. 16-CV-2048, 2017 WL 3879201, at *2 (Tenn. Ct. App. Aug. 31, 2017) (quoting *Custom Built Homes v. G.S. Hinsen Co.*, No. 9511-CV-513, 1998 WL 960287, at *4 (Tenn. Ct. App. Feb. 6, 1998)). Evidence of damages "must be sufficiently certain to enable the trier of fact, using its discretion, to make a fair and reasonable assessment of damages." *BancorpSouth*, 223 S.W.3d at 230. Plaintiffs cannot "recover damages that are uncertain, contingent, or speculative," *Reitz*, 2017 WL 3879201, at *2, and generally cannot recover for noneconomic losses like mental anguish, injury to reputation, or loss of goodwill. *See id.* at *2–3.

"Lost or expected profits are recoverable as damages if they are shown to be a consequence of the breach, provided the amount can be proved with reasonable certainty." *Baker v. Hooper*, 50 S.W.3d 463, 470 (Tenn. Ct. App. 2001). An award for lost profits estimates "what the injured party's probable earnings and expenses would have been had the wrongdoing not occurred." *Waggoner Motors, Inc. v. Waverly Church of Christ*, 159 S.W.3d 42, 58–59 (Tenn. Ct. App. 2004). "The existence and amount of lost profits damages may be established by expert testimony." *Id.* at 60–61 (collecting cases). But "an expert's testimony is unreliable, even when the underlying data is sound,

13

if the expert employed flawed methodology or applied sound methodology in a flawed way." *Id.* at 61 (cleaned up).

The only evidence of actual damages proffered by Bruce comes from Bert Davis, whom it proffered as an expert. *See* Doc. 99. Mr. Davis concedes that he did not perform a comparison between Bruce's business before the alleged wrongdoing and after the alleged wrongdoing, Doc. 84-4 at 7, which is the best evidence of lost profits. *See Waggoner Motors*, 159 S.W.3d at 59. And he did not determine whether Bruce lost any customers because of the breach. Doc. 84-4 at 16–17. Instead, he based his opinion on the revenue earned by Terminix from its national accounts and by Gregory and Copesan. *See id.* at 8. He has no opinion on whether Bruce was harmed by the acquisition of Copesan or Gregory. *Id.* at 17–18. Evidence from Mr. Davis is insufficient to establish lost profits or actual damages and would in any event be excluded under Federal Rule of Evidence 702.

Bruce points to the report of the defendants' damages expert, Ryan Herrington, to show lost profits. Doc. 90 at 6. Bruce contends Mr. Herrington's report shows it suffered $38.30 in lost profits. *Id.* (citing Doc. 90-3). But Mr. Herrington does not express an opinion on whether Bruce lost profits. Instead, his report is an evaluation of Mr. Davis' report; he provides that number hypothetically, as a way of showing how Mr. Davis could have reliably calculated lost profits. *See* Doc. 90-3 at 3–5. Bruce provides no other evidence of lost profits.

Bruce contends it has suffered "non-monetary harms," Doc. 90 at 6, like market confusion and loss of goodwill. *Id.* at 5–6. Bruce has shown evidence to support these

14

harms, *see e.g.*, Doc. 86 at ¶ 27, but under Tennessee law damages for breach of contract are "nothing more than payment in money for actual losses caused by the breach." *Reitz*, 2017 WL 3879201, at *2. Plaintiffs generally cannot recover for noneconomic losses. *See id.* at *2–3.

Bruce contends summary judgment is not proper because it can receive nominal damages or injunctive relief. Doc. 90 at 7–8. The License Agreement allows for injunctive relief, Doc. 1-1 at 17 § XX/C, and Tennessee law allows nominal damages when the plaintiff cannot prove actual damages to a reasonable degree. *See Baker*, 50 S.W.3d at 470–71; *Gibbons v. Bennett*, No. 19-CV-2188, 2021 WL 423806, at *14 (Tenn. Ct. App. 2021); *Gay & Taylor, Inc. v. Am. Cas. Co. of Reading*, 381 S.W.2d 304, 307 (Tenn. Ct. App. 1963); *Keller v. West-Morr Invs., Ltd.*, 770 S.W.2d 543, 551–52 (Tenn. Ct. App. 1988); *Seat v. Moreland*, 26 Tenn. 575, 576 (1847). Thus, the absence of actual monetary damages does not doom Bruce's breach of contract claim.

Terminix contends nominal damages are not appropriate because Bruce did not request nominal damages in its complaints, *see* Docs. 1, 58, and the Fourth Circuit has said that a plaintiff "does not preserve a nominal damages claim when there is absolutely no specific mention in the [c]omplaint of nominal damages." *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 116 (4th Cir. 2021) (cleaned up). *Foodbuy*, however, arose in a very different context and on very different facts. There, the plaintiff sought actual damages from the defendant for overcharging Foodbuy's customers. *Id.* at 111. The Fourth Circuit held that Foodbuy did not have standing to bring the overcharging claim because it had not demonstrated personal harm. *Id.* at 116. The court noted it

15

"need not reach Foodbuy's novel contention that nominal damages alone, without any other cognizable form of relief, can create standing because it never asserted it was entitled to nominal damages in its [c]omplaint." *Id.* at 116 (cleaned up).

This case is different. In *Foodbuy*, the plaintiff sought to recover for unjustified charges to its customers, not unjustified charges to itself. Here, it is Bruce who was harmed, not its customers. And unlike in *Foodbuy,* there is no question that Bruce has standing to bring the breach of contract claim. Terminix is breaching a contract that gives Bruce exclusive rights within a certain territory, causing at least some customer confusion and loss of goodwill, which Bruce did allege in its complaint. *See* Doc. 1 at ¶¶ 134, 141. These harms, even if unquantified, are redressable through nominal damages. *See Uzuegbunam v. Preczewksi*, 141 S. Ct. 792, 800 (2021) ("Nominal damages are not a consolation prize for the plaintiff who pleads, but fails to prove, compensatory damages. They are instead the damages awarded by default until the plaintiff establishes entitlement to some other form of damages.").

The defendants' motion for summary judgment will be granted in part and denied in part. The breach of contract claim will not be dismissed, but the defendants' motion is granted as to Bruce's claim for damages beyond nominal damages.

## III.    Breach of Contract Claim Against TGH

TGH moves for summary judgment on the breach of contract claim and the related declaratory judgment claim, contending Bruce has not established the elements to pierce Terminix's corporate veil. Doc. 83; Doc. 84 at 23–25. The motion will be granted.

16

It is undisputed that TGH is not a party to the License Agreement and the only way to hold TGH liable for breach is through veil piercing. The parties dispute whether North Carolina law or Delaware law applies and whether Bruce has provided sufficient evidence to pierce the corporate veil.

In a diversity case, a federal district court applies the choice of law rules of the state in which it sits. *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013). North Carolina has not "conclusively determined whether North Carolina law or the law of an entity's state of incorporation applies to veil piercing issues." *Young v. Carter*, No. 19-CV-218, 2020 WL 525930, at *3 (E.D.N.C. Jan. 31, 2020); *see Strategic Outsourcing, Inc. v. Stacks*, 176 N.C. App. 247, 252–53, 625 S.E.2d 800, 804 (2006).

The Court need not decide the choice of law issue here because Bruce has not satisfied the elements to pierce the corporate veil under either North Carolina law or Delaware law. In both states, veil piercing is rare. *See Green v. Freeman*, 367 N.C. 136, 145, 749 S.E.2d 262, 270 (2013) ("Disregarding the corporate form is not to be done lightly."); *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706 (Del. Ch. 2021) ("Delaware public policy disfavors disregarding the separate legal existence of business entities." (cleaned up)).

Here, Bruce has not shown that TGH exclusively dominates Terminix such that Terminix has no existence on its own. TGH is a holding company, Doc. 90-4 at 4, that operates "entirely through [its] subsidiaries," *id.* at 3; TGH and Terminix "share corporate headquarters and use the same human resources, information technology, and

17

accounting departments," Doc. 32 at ¶ 108; and "TGH controls the policies and business practices of" Terminix. *Id.* at ¶ 114.

But it is not enough to show that a parent and subsidiary share resources or that a parent controls the actions of its subsidiary. *See Wenske v. Blue Bell Creameries, Inc.*, No. 17-CV-699, 2018 WL 5994971, at *5 (Del. Ch. Nov. 13, 2018) (unpublished) ("[T]here exists a presumption of corporate separateness, even when a parent wholly owns its subsidiary and the entities have identical officers and directors." (citing *Allied Cap. Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1038 (Del. Ch. 2006))); *Banks v. Theodore Banks & S. Comfort, LLC*, No. 22-428, 2022 WL 17261512, at *5 (Del. Ch. Nov. 29, 2022) (unpublished) ("Mere control and even total ownership of one corporation by another is not sufficient."); *Richardson v. Bank of Am., N.A.*, 182 N.C. App. 531, 547–48, 643 S.E.2d 410, 421 (2007) (noting veil piercing was not appropriate even though the parent and subsidiary had "overlapping officers" and the parent "controlled the day-to-day operations of" the subsidiary). Bruce provides no evidence of inadequate capitalization, lack of corporate formalities, siphoning of funds, or any other fact to indicate that Terminix operates as a mere sham entity for TGH.

Nor has Bruce shown that TGH used Terminix to commit a fraud or other wrong or that piercing the corporate veil is necessary to remedy that wrong. It contends that TGH "engaged in an elaborate corporate shell game to commit an unjust act in contravention of Bruce's rights." Doc. 90 at 24. But TGH's acquisitions and the merger with Rentokil are not violations of Bruce's rights under the License Agreement. It is not fraud to act in a way that avoids breaching a contract. The real dispute here is over

18

Terminix's breach of the License Agreement, and veil piercing is not necessary because the harm is redressable by a judgment against Terminix. *See Green*, 749 S.E.2d at 270 (noting the purpose of veil piercing is to allow "injured parties to bring claims against individuals [and companies] who otherwise would" be "shielded by the corporate form"); *BASF Corp. v. POSM II Props. P'ship*, No. 3608, 2009 WL 522721, at *8 n.50 (Del. Ch. Mar. 3, 2009) (unpublished) (noting veil piercing is only allowed when "the interests of justice require it").

Since Bruce has not established the elements necessary to pierce the corporate veil, TGH's motion for summary judgment on the breach of contract claim and the related declaratory judgment claim will be granted.

## IV. Chapter 75 Claim Against Terminix and TGH

Terminix, TGH, and Bruce move for summary judgment on the Chapter 75 claim. Doc. 83; Doc. 90 at 17 (response brief requesting summary judgment on this claim). The defendants' motion will be granted, and Bruce's motion will be denied.

Bruce has not shown any substantial aggravating circumstances accompanying the breach of contract, without which even an intentional breach "is not sufficiently unfair or deceptive to sustain" a Chapter 75 claim. *Izzy Air, LLC v. Triad Aviation, Inc.*, 284 N.C. App. 655, 661, 877 S.E.2d 65, 71 (2022); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 346–47 (4th Cir. 1998) (holding the district court erred in allowing parallel Chapter 75 and breach of contract claims). Nor has Bruce shown that any conduct by TGH was unfair or deceptive. TGH has no independent contractual duties to Bruce, and there is nothing inherently unfair or deceptive about acquiring or merging

19

with other pest control companies. The dispute in this case "is and always has been a contract dispute" with Terminix. *Broussard*, 155 F.3d at 346.

## V.    Tortious Interference with Contract Claim Against TGH

TGH moves for summary judgment on the claim for tortious interference with a contract. Doc. 83. The motion will be granted.

"The elements of a tortious interference with a contract claim are: (1) a valid contract existed between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person; (2) the defendants knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) the defendant acts without justification; and (5) the defendant's conduct causes actual pecuniary harm to the plaintiffs." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 604, 646 S.E.2d 826, 832 (2007).

The undisputed evidence shows TGH acted with justification as a corporate non-outsider. TGH is a corporate non-outsider because it is Terminix's ultimate parent company and has a legitimate business interest in Terminix. *See Button v. Level Four Orthotics & Prosthetics, Inc.*, 380 N.C. 459, 467–68, 869 S.E.2d 257, 265 (2022) (defining corporate non-outsider). Thus, TGH has a "qualified privilege leading to a presumption that" it acted in Terminix's best interest. *Id.* And the undisputed evidence shows that TGH acquired Gregory and Copesan to increase its presence in the Carolinas and maximize profit margins. *See* Doc. 90-6 at 32–33; *id.* at 34 ("[I]f ServiceMaster didn't buy [Gregory], somebody else would have and over time . . . that will devalue the . . . company's brand."). In the absence of proof that TGH acted with malice, *see*

20

*Button*, 869 S.E.2d at 265, Bruce cannot prevail on this claim. *See Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.*, 160 N.C. App. 520, 523–24, 586 S.E.2d 507, 510 (2003).

TGH's motion for summary judgment on the tortious interference with a contract claim will be granted.

## VI.    Conclusion

The undisputed facts show that Terminix breached the License Agreement in some ways but not in others. Bruce is entitled to nominal damages, declaratory relief, and possibly injunctive relief for the breach. But Bruce has not proven any claims against TGH, nor has it proven a Chapter 75 claim against either defendant. Since no genuine dispute of material fact remains, a trial is not necessary.

It is **ORDERED** that:

1. Bruce's motion for leave to file a supplemental declaration, Doc. 98, is **GRANTED**.

2. TGH's motion for summary judgment, Doc. 83, is **GRANTED** as to all claims against it.

3. Terminix's motion for summary judgment, Doc. 83, is **GRANTED** as to Bruce's Chapter 75 claim.

4. The cross-motions for summary judgment related to the breach of contract claim and the declaratory judgment claim, Docs. 83, 85, are **GRANTED in part** and **DENIED in part** to the extent stated herein.

5. No later than March 8, 2023, the parties **SHALL** exchange proposals and then **SHALL** meet and confer as to the form of a final judgment and a

21

declaratory judgment. No later than March 15, 2023, the parties **SHALL** submit a joint proposal or competing proposals, along with a brief clearly identifying any differences and supporting that party's proposal.

6. If Bruce wishes to pursue its request for a permanent injunction, it **SHALL** provide its proposed injunction to the defendants no later than March 8, 2023; the parties **SHALL** meet and confer; and Bruce **SHALL** file its motion and brief in support no later than March 15, 2023; any response **SHALL** be filed no later than March 24, 2023; and any reply **SHALL** be filed no later than March 31, 2023.

7. As this Order and the judgments that will implement it will resolve all outstanding claims, the trial scheduled for April 17, 2023, is cancelled, and the parties are excused from all trial preparation deadlines.

This the 1st day of March, 2023.

_____
UNITED STATES DISTRICT JUDGE