IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BRUCE-TERMINIX COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20-CV-962 |
| | ) | |
| THE TERMINIX INTERNATIONAL COMPANY LIMITED PARTNERSHIP, and TERMINIX GLOBAL HOLDINGS, INC., | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

At summary judgment, the Court found that the defendant Terminix International Company Limited Partnership (Terminix) breached a License Agreement which gave the plaintiff Bruce-Terminix exclusive rights to use the Terminix name, brand, and system in a defined territory. The matter is before the Court now on Bruce's motion for a permanent injunction. The motion will be granted in part, to the extent consistent with the Court's Summary Judgment Order.

### I. Findings of Fact

The Court adopts by reference the undisputed facts as stated in its Summary Judgment Order. Doc. 108 at 1–7. In summary, Bruce is a pest control company that has an exclusive license from Terminix to use the Terminix name, brand, and system in 17 counties in North Carolina. *See* Doc. 1-1 at 4–5, 9, 20; Doc. 86 at ¶¶ 3–4. The License

Agreement allows for injunctive relief, Doc. 1-1 at 17 § XX/C, and is governed by the laws of Tennessee. *Id.* at 17 § XX/A.

Under the License Agreement, Terminix agreed that it "will not itself establish, nor will it license another to establish, within [Bruce's service area], a location from which to operate a Terminix System," *id.* at 9 § VII/A, and that it "will not license another to establish, nor will [Terminix] itself establish, within [Bruce's service area], a location from which to operate a business similar to the Terminix System, under a name other than TERMINIX." *Id.* at 9 § VII/B.

In 2018 and 2019, Terminix's parent company, now Terminix Global Holdings, Inc. (TGH), Doc. 89-1 at ¶ 13, acquired two entities involved in pest control in Bruce's exclusive territory: Copesan and Gregory Pest Solutions. *Id.* at ¶¶ 3–5, 8; *see* Doc. 90-5. At summary judgment, the Court found that these acquisitions were not a breach of the License Agreement because Terminix did not acquire these companies. Doc. 108 at 8.

Before it was acquired by TGH, Gregory provided pest control services to customers throughout the southeastern United States. Doc. 89-1 at ¶ 4. Gregory no longer exists outside of the Carolinas; elsewhere, it has become part of the Terminix brand. *See* Doc. 88-19 at 13–14. While Gregory does not own or lease a physical location within Bruce's exclusive territory, Doc. 89-1 at ¶ 11, Gregory employs technicians who provide services to customers within Bruce's exclusive territory. Doc. 88-2 at 6–9; *see* Doc. 89-1 at ¶ 4.

Terminix handles Gregory's recruiting needs and screens applicants for employment. Doc. 88-19 at 19–20. Gregory has used the Terminix name in job postings

at least twice within Bruce's exclusive territory. Doc. 86 at ¶¶ 23–24; *see* Doc. 86-6; Doc. 98-1 at ¶¶ 4–8.

Once hired, Gregory employees have access to Aspire, which is Terminix's confidential training program, *see* Doc. 88-19 at 11, 26, Doc. 88-16 at 27, Doc. 86 at ¶¶ 6–9, and to Terminix Nation which is the "intranet site for Terminix" and contains sales, marketing, and other training materials. Doc. 88-16 at 16–17, 35–36. Gregory also has access to the benefits of "Terminix fleet deals and services." Doc. 88-19 at 12. Gregory uses Terminix's four-step tick treatment method, the Tick Defend System, with "Gregory-branded marketing materials." Doc. 88-16 at 32–35, 37–38; *compare* Doc. 88-10 at 15 (Terminix's Tick Defend System), *with* Doc. 88-11 at 3 (Gregory's Tick Defend System). All of these materials, methods, and information are part of the Terminix System.

Copesan is a management company that contracts with local pest control providers to provide pest control services to Copesan's customers. Doc. 89-1 at ¶ 8. Copesan used the Terminix name to solicit a contract in competition with Bruce, Doc. 86 at ¶¶ 27–28, Doc. 86-11 at 2–3, Doc. 90-9 at 11–13, which Gregory would perform. *See* Doc. 88-18 at 14.

The License Agreement prohibits Terminix from licensing another entity to establish a location from which to operate a Terminix System. Terminix breached the License Agreement by authorizing Gregory to use the Terminix name, brand, and system within the service area, effectively licensing TGH to establish a location within Bruce's

3

exclusive territory from which to operate a competing Terminix System. Doc. 108 at 8–9.

In October 2022, TGH merged with a global pest control business called Rentokil. Doc. 89-1 at ¶ 1; *see* Doc. 58-4 at 2. Rentokil now owns five pest control businesses that compete with Bruce in the service area, Doc. 89-1 at ¶¶ 6, 20, and is integrating with Terminix "to form the world's leading pest control company." Doc. 86-14 at 2.

The License Agreement does not prohibit Terminix or TGH from merging or integrating with Rentokil. Doc. 108 at 11. "The License Agreement only prohibits Terminix from authorizing the use of the Terminix name, brand, or system to any Rentokil subsidiary that provides pest control services within Bruce's exclusive territory." *Id*. There has been no evidence that Terminix has granted this permission to Rentokil.

Bruce offered credible evidence of some harm to reputation and some customer confusion caused by Terminix's breach. Doc. 86 at ¶ 27; Doc. 90-9 at 11–13. Bruce had no evidence of actual damages, as the testimony of its witness on damages was insufficient under Tennessee law to prove lost profits; it is limited to nominal damages, declaratory relief, and potentially injunctive relief. *See* Doc. 108 at 12–16.

## II.  Applicable Law

State substantive law applies to Bruce's request for a permanent injunction. *See Lord & Taylor, LLC v. White Flint, L.P.*, 780 F.3d 211, 215 (4th Cir. 2015) ("[State] substantive law applies in this diversity action, and governs [the plaintiff's] claim for a permanent injunction."); *Cap. Tool & Mfg. Co. v. Maschinenfabrik Herkules*, 837 F.2d

4

171, 172 (4th Cir. 1988) ("There is no reason to exclude from *Erie* state substantive law regarding the issuance of final injunctions."); *McNulty v. Casero*, 479 F. Supp. 3d 200, 211 (D. Md. 2020) (noting that "federal courts should apply substantive state law principles" to requests for permanent injunctions in diversity cases).

To determine whether North Carolina or Tennessee law applies, the Court applies the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *McNulty*, 479 F. Supp. 3d at 210–11; 19 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4506 (3d ed. 2023) ("[I]t is settled that as to matters governed by state law under *Erie*, a federal court must follow the forum state's choice-of-law rules to determine which state's . . . law to apply.").

Under North Carolina law, the law of the forum applies to procedural matters. *Warren Cnty. Dep't of Soc. Servs. ex rel. Glenn v. Garrelts*, 278 N.C. App. 140, 143–44, 862 S.E.2d 65, 69 (2021). This is true even when a contract contains a choice-of-law provision. *See Tenn. Carolina Transp., Inc. v. Strick Corp.*, 283 N.C. 423, 431, 196 S.E.2d 711, 716 (1973); *Wohlfahrt v. Schneider*, 82 N.C. App. 69, 73–74, 345 S.E.2d 448, 450–51 (1986). North Carolina courts consider matters affecting the remedy, such as injunctive relief, to be procedural. *See Revels v. Miss Am. Org.*, 165 N.C. App. 181, 187, 599 S.E.2d 54, 58 (2004) (noting remedial rights are determined by the law of the forum); *Travenol Labs., Inc. v. Turner*, 30 N.C. App. 686, 692, 228 S.E.2d 478, 483 (1976) ("While the substantive law being administered here is that of California, the procedural law, including that of injunctive relief, is that of North Carolina."); *Redlee/SCS, Inc. v. Pieper*, 153 N.C. App. 421, 427, 571 S.E.2d 8, 13 (2002) (noting

5

injunctive relief is determined by North Carolina law). Thus, North Carolina law governs the request for injunctive relief.[1]

### III. Discussion

Under North Carolina law, courts have discretion to "grant, deny, limit, or shape" injunctive relief after "balancing equities, hardships, and the interests of the public and of third persons." *Roberts v. Madison Cnty. Realtors Ass'n*, 344 N.C. 394, 399, 474 S.E.2d 783, 787 (1996). The moving party must show: (1) an "irreparable injury;" (2) that "damages are not reasonably obtainable;" and (3) that "the injury is of such continuous and frequent recurrence that no reasonable redress can be had in a court of law." *Asheville Mall, Inc. v. Sam Wyche Sports World, Inc.*, 97 N.C. App. 133, 135, 387 S.E.2d 70, 71 (1990) (cleaned up); *see also Town of Winterville v. King*, 60 N.C. App. 730, 734, 299 S.E.2d 838, 841 (1983).

On the one hand, a permanent injunction is an extreme remedy. *Wood v. Vickrey*, 276 N.C. App. 427, 442, 857 S.E.2d 734, 745 (2021). "[C]ompleted acts and past occurrences in the absence of any evidence tending to show an intention on the part of the defendants to commit future violations will not authorize the exercise of the court's injunctive power." *Citizens Addressing Reassignment & Educ., Inc. v. Wake Cnty. Bd. of Educ.*, 182 N.C. App. 241, 247, 641 S.E.2d 824, 828 (2007) (cleaned up); *see also Asheville Mall*, 387 S.E.2d at 71. On the other hand, injunctions are routinely granted

---

[1] The factors to be considered under North Carolina law, Tennessee law, and federal law are not all that different. *See infra* page 6; *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Vintage Health Res., Inc. v. Guiangan*, 309 S.W.3d 448, 467 (Tenn. Ct. App. 2009). The Court would reach the same result in this case if it applied federal law or Tennessee law.

by North Carolina courts in cases involving breaches of covenant-not-to-compete clauses. *See A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 406–08, 302 S.E.2d 754, 762–63 (1983); *Redlee/SCS, Inc.*, 571 S.E.2d at 13–14; *QSP, Inc. v. Hair*, 152 N.C. App. 174, 178–79, 566 S.E.2d 851, 854 (2002); *Digit. Realty Tr., Inc. v. Sprygada*, No. 21-CV-14999, 2022 WL 2398394, at *15–17 (N.C. Bus. Ct. July 1, 2022).[2]

### A. Authorization of the Terminix Name, Brand, and System

Bruce seeks to enjoin Terminix for the remainder of the term of the License Agreement from

> using, or authorizing or permitting the use, directly or indirectly, of the Terminix System, Terminix brand, and related Terminix marks and trade dress by any other entity engaged in a pest control business other than Bruce, including TGH, Gregory Pest Control ("Gregory"), Rentokil Initial plc, and its affiliates and subsidiaries ("Rentokil"), within Bruce's Service Area, and which includes the following:
>
> (a) Confidential training materials demonstrating the experience, skill and special techniques and know-how in the business of rendering termite and other pest control, such as the Aspire training guide;
> (b) Confidential material[s], such as service protocols, product and sales guides, sales and service training, new hire training, policies and procedures manuals, and other technical Terminix information demonstrating the experience, skill and special techniques and know-how in the business of rendering termite and other pest control found on the Terminix intranet sites, Terminix Nation;
> (c) Terminix advertising, marketing and lead generation materials;

---

[2] While these are all preliminary injunction cases, the Supreme Court of North Carolina has noted that "many of the considerations involved in the decision to grant or deny [a] preliminary injunction parallel those involved in a final determination on the merits" of a plaintiff's request for a permanent injunction. *A.E.P.*, 302 S.E.2d at 762. The court also characterized as persuasive the plaintiff's argument that in noncompete cases "breach is the controlling factor and injunctive relief follows almost as a matter of course." *Id.*

7

> (d) Terminix product sourcing and vehicle fleet management services;
> (e) Terminix-branded products and services, such as Disinfectix and Tick Defend; and
> (f) Other such confidential and valuable information that constitute and are a part of the Terminix System.

Doc. 111-1 at 3–5. This injunctive relief is appropriate to address Bruce's harms and will be granted with minor modifications.

Bruce has suffered an irreparable harm and damages are not reasonably available to compensate for the harm. Terminix breached the License Agreement by allowing Copesan and Gregory to use the Terminix name, brand, and system in Bruce's service area, undermining Bruce's competitive advantage and causing customer confusion in the area. Damages are not reasonably available because recovery for these non-monetary harms is not available under applicable Tennessee law, and, as the evidence in this case shows, damages are difficult if not impossible to prove given the nature of the breach. *See* Doc. 108 at 14–15.

Here, the License Agreement is similar to a covenant-not-to-compete because it essentially prohibits Terminix from using the Terminix name and system in competition with Bruce in the service area. North Carolina law also gives weight to an agreement between the parties that injunctive relief is appropriate, *see A.E.P.*, 302 S.E.2d at 762, which we have here. Doc. 1-1 at 17 § XX/C (showing that the parties have the right "to obtain injunctive relief against threatened conduct that will cause loss or damage").

The injury is of such continuous recurrence that an injunction is appropriate. While Terminix states that it no longer plans to engage in conduct that violates the

8

License Agreement, Doc. 114 at 14, such a promise is not enough here. Throughout the litigation, Terminix contended that Gregory did not use the Terminix brand or system in the service area, Doc. 89 at 9, even though the undisputed evidence at summary judgment showed that Terminix had granted Gregory access to the Aspire training program, the Terminix Nation intranet site, Terminix's Tick Defend System, and Terminix's fleet management resources. Doc. 108 at 8–10. Gregory twice used the Terminix name in a job posting in the service area, *see* Doc. 86-6, Doc. 98-1 at ¶¶ 4–8; one posting even occurred after Terminix contended that Gregory was "free of Terminix branding" and while the summary judgment motions were pending. *See* Doc. 98-1 at ¶¶ 4–8; Doc. 89 at 9. Terminix refused to withdraw a bid by Copesan after it received notice that Copesan used the Terminix name to compete with Bruce for a contract. Doc. 86 at ¶¶ 27–28; *see* Doc. 86-12 at 2. It is neither "adequate" nor "efficient" to force Bruce to file a new lawsuit each time Terminix breaches the License Agreement. *See Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 442 F. App'x 776, 785 (4th Cir. 2011) (unpublished) (cleaned up). A permanent injunction is necessary to prevent Terminix from further authorizing the use of the Terminix name, brand, and system to pest control businesses other than Bruce in the service area.

Terminix contends that the requested injunction is not appropriate because any injunction must be "tied to the breaching conduct found by" the Court; specifically, it must be limited to the Aspire training program, the intranet site, the Tick Defend System, and the fleet management resources. Doc. 114 at 8. But those violations, plus the use of the Terminix name in a job posting and a competing contract, are quite broad; they show

9

a willingness by Terminix to give others in Bruce's territory access to significant parts of the Terminix System. Terminix says in its brief that "all along, Terminix agreed that Bruce should be the only business in the Service Area that uses the Terminix name, brand, and system," *id.* at 21, but it has not acted consistently with that purported agreement. Given Terminix's unexplained intransigence and willingness to ignore violative conduct, a narrow injunction would not adequately protect Bruce's rights. National accounts aside, the License Agreement prohibits Terminix from authorizing the use of any part of the Terminix System to a pest control business in Bruce's service area, and Terminix offers no reason why the injunction should not require Terminix to comply with its promises.

Terminix also contends that there is nothing special or confidential about the Aspire training system. *Id.* at 8–9. But the undisputed evidence shows that Terminix's training materials are confidential. *See* Doc. 88-16 at 27 (noting that Terminix training materials provided to franchises "would be confidential materials"). In any event, the License Agreement does not require that the particular information within the Terminix System be confidential to limit Terminix's use of it; it simply has to be part of the Terminix System, which Aspire is. *See* Doc. 1-1 at 4 (defining the Terminix System to include "the experience, skill and special techniques and know-how in a" pest control business); Doc. 108 at 5–6 (finding Aspire is part of the Terminix System). Moreover, Terminix's implicit contention that its training system has no value is inconsistent with the language of the License Agreement, where both parties agreed that "each and every detail of the Terminix System is important to [Terminix]." Doc. 1-1 at 6 § III/C.

10

Terminix's argument is not credible and is inconsistent with its actions otherwise, where it has conceded and indeed agrees that the Terminix System is a valuable asset of Terminix.

Terminix contends that the proposed injunction effectively forces Rentokil "to operate under the strictures of an injunction" and "is inherently harmful." Doc. 114 at 20. First, the permanent injunction will be directed to Terminix, not Rentokil. Second, Terminix does not explain why it should be allowed to authorize Rentokil to do what Terminix itself cannot do. Terminix must comply with the License Agreement, and there is no reason Rentokil, whose rights to the Terminix System flow from Terminix, should be able to use the Terminix System in ways Terminix cannot. The fact that Rentokil, a non-party, might not like the injunction is not a reason to ignore Bruce's rights under the License Agreement. Similarly, the fact that the injunction might effectively prevent or discourage Rentokil from causing Terminix to breach the License Agreement is not a reason to deny Bruce relief to which it is otherwise entitled. If anything, the equities run the other way. *See Signature Flight*, 442 F. App'x at 785 (noting the balance of equities favored injunctive relief because it "merely restore[d] the contractual rights of the parties").

Terminix contends that the injunction "would leave the Court managing the relationship between Terminix and Bruce and the internal affairs of non-party Rentokil." Doc. 114 at 22. It also prophesies that Bruce will take unreasonable advantage of the injunction to bring unfounded contempt motions. *Id.* at 23. Terminix overstates the enforcement and feasibility issues likely to arise.

11

The parties have primarily disagreed over what the phrase "the Terminix System" encompasses, but the Court resolved that question in large part at summary judgment. An occasional disagreement may arise in the future, but unless Terminix treats the injunction with the same disregard as it treated its contractual obligations to Bruce, those disagreements should not be extensive. The possibility that Rentokil might use the Terminix System in a way that Terminix does not authorize does not mean an injunction is inappropriate, and it does not excuse Terminix from complying with its contractual obligations. Ordinarily, litigants comply with permanent injunctions. The Court has no reason to think that Terminix will not comply; indeed, Terminix contends in its brief that it plans to comply. *Id.* at 14. On the other side, if Bruce brings overbroad or meritless motions for contempt and Terminix is in full compliance, the Court can always vacate the permanent injunction if it is clear it is unncessary.

As of now, Bruce has met the requirements for permanent injunctive relief. The Court finds in its discretion that the relief is feasible. *See Lord & Taylor*, 780 F.3d at 219 (noting that whether injunctive relief will be feasible "goes to the heartland of [the] court's discretion to manage its own affairs").

Terminix contends that it can share its confidential information "with whomever it chooses." Doc. 114 at 19. This is not so. While it may not be a breach for Terminix to disclose its confidential information to Rentokil or other entities who do not operate in Bruce's service area, Doc. 108 at 11, it is a breach for Terminix to share the confidential information that is part of the Terminix System with Bruce's competitors in the service area. The Court has already found that Terminix breached the License Agreement by

12

sharing its confidential information that is part of the Terminix System with Gregory. *Id.* at 8–10. Terminix's inexplicable assertion that it can share its confidential information with whomever it wants shows that Bruce's fear of irreparable injury is not speculative and weighs in favor of granting Bruce's motion.

Terminix contends that the balance of equities weighs in its favor because many of Bruce's claims were dismissed and Bruce ultimately recovered only one dollar in nominal damages. Doc. 114 at 20–21. But Terminix ignores the fact that Bruce succeeded in part on the breach of contract claim and had to sue in the first place because Terminix's interpretation of the License Agreement was unreasonable and ignored the overall context of the License Agreement, the expectations of the parties at the time of drafting, and the parties' actions in performing the contract over the past 40-plus years. *See* Doc. 108 at 10. Moreover, under North Carolina law the difficulty in determining actual damages, certainly present here, is a factor in favor of injunctive relief. *See A.E.P.*, 302 S.E.2d at 762.

The License Agreement contains an arbitration provision, Doc. 1-1 at 17 § XX/B, and Terminix contends that the "requested permanent injunction is an attempt to keep . . . disputes out of arbitration and have them perpetually before this Court under its contempt powers." Doc. 114 at 24. According to Terminix, it did not move to compel arbitration in this case because Bruce also sued TGH, a non-party to the agreement. *Id.* at 23. The License Agreement provides that the parties must arbitrate disputes between them, "[e]xcept as specifically otherwise provided in this Agreement." Doc. 1-1 at 17 § XX/B. It also provides that nothing in the License Agreement "shall bar the right to

13

either party to obtain injunctive relief against threatened conduct that will cause loss or damage, under the usual equity rules." *Id.* at 17 § XX/C. Thus, the arbitration provision does not bar Bruce from seeking injunctive relief or from enforcing injunctive relief in this court or any other court.

Bruce seeks to prohibit Terminix from sharing any "[o]ther such confidential and valuable information that constitute and are a part of the Terminix System." Doc. 111-1 at 5. This language comes directly from the contract, *see* Doc. 1-1 at 5 § I/A, and is particularly appropriate in view of Terminix's ongoing assertion that it can disclose its information to whomever it wants, Doc. 114 at 18–19, despite contract language to the contrary.

### B. Managing, Operating, and Supporting Competing Businesses

Bruce also seeks to enjoin Terminix "from managing, operating or supporting the operations of competing pest control businesses operating within Bruce's Service Area, including home locations of Gregory employees who work within the Service Area" for the remainder of the duration of the License Agreement. Doc. 111-1 at 5. Because this proposed injunctive relief prohibits Terminix from engaging in conduct that is not restricted by the License Agreement, it will be denied.

At summary judgment, the Court interpreted the License Agreement to mean that TGH did not breach by merging and integrating with Rentokil, Doc. 108 at 11, and that the operations of Rentokil subsidiaries within Bruce's service area "are not a breach of the License Agreement so long as Terminix does not provide Rentokil with permission for Rentokil's operators within Bruce's territory to use the Terminix name, brand, or

14

system." *Id.* at 11–12. Thus, Terminix's management and operation of Rentokil subsidiaries, without more, is not a breach of the License Agreement, and it is not appropriate to prohibit Terminix from engaging in conduct that it is otherwise allowed to do under the License Agreement.

Bruce contends that it "will suffer continuing harm if Terminix is allowed to establish a similar pest control business in the Service Area by managing, controlling, or supporting a competitor." Doc. 112 at 6. In the License Agreement, Terminix agreed that it will not establish nor license another to establish a location from which to operate the Terminix System in the service area or a location from which to operate a business similar to the Terminix System in the service area. Doc. 1-1 at 9 § VII/A–B. While this provision would prevent Terminix from acquiring a business in Bruce's service area that uses similar methods for pest control as the Terminix System, it does not prevent Terminix from operating an existing pest control business acquired by a parent that does not use the Terminix name, brand, or system. These businesses competed with Bruce before the merger with Rentokil, and they will not have a competitive advantage after the merger so long as Terminix does not authorize them to use, and they do not use, the Terminix name, brand, and system. Thus, the second form of injunctive relief will be denied because it is overbroad.

## IV. Conclusion

Terminix will be enjoined from authorizing the use of the Terminix name, brand, and system to pest control businesses in Bruce's service area for the remainder of the duration of the License Agreement. But Terminix will not be enjoined from managing,

15

operating, and supporting competing businesses in the service area acquired by its parent or related companies regardless of their use of the Terminix name, brand, and system.

It is **ORDERED** that:

1. The plaintiff's motion for permanent injunction, Doc. 111, is **GRANTED in part** and **DENIED in part**.

2. The permanent injunction will issue separately as part of the declaratory judgment and final judgment.

3. The defendant's motion for oral argument, Doc. 116, and the plaintiff's motion to file a response to the defendant's sur-reply, Doc. 118, are **DENIED** as unnecessary.

This the 17th day of April, 2023.

_____
UNITED STATES DISTRICT JUDGE

16