IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BRUCE-TERMINIX COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20-CV-962 |
| | ) | |
| THE TERMINIX INTERNATIONAL | ) | |
| COMPANY LIMITED | ) | |
| PARTNERSHIP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**
**FINDING TERMINIX IN CIVIL CONTEMPT**

Catherine C. Eagles, Chief District Judge.

In 1975, plaintiff Bruce-Terminix Company and the defendant Terminix

International Company Limited Partnership entered into a license agreement that gave

Bruce the exclusive right to use the Terminix name, brand, and system in 17 North

Carolina counties. After disputes arose, litigation followed in 2020. In 2023, after

granting summary judgment in favor of Bruce on most issues, the Court issued a

permanent injunction that enjoined Terminix from allowing any other company operating

in Bruce's service area to use the Terminix name, brand, and system.

Very late in the litigation, Rentokil Initial PLC acquired Terminix. Rentokil

already operated competing businesses within Bruce's service area. Since the

acquisition, Rentokil has continued to operate a competitor, now known as "Bug Out," in

Bruce's service area. Bruce contends that Terminix is violating the permanent injunction

by giving Bug Out access to the Terminix System, and it seeks an order of civil contempt to compel compliance.

The Court finds and concludes that Terminix, through Rentokil, is giving Bug Out access to large chunks of the Terminix System. This is in violation of the injunction, and Terminix is in contempt of court.

## I.    Background and Procedural History

Bruce-Terminix is a pest control company with an exclusive license from Terminix to use the Terminix name, brand, and system in 17 counties in North Carolina, Doc. 108 at 2, excluding national accounts. *Id.* at 10. Under the License Agreement, Terminix agreed that it "will not itself establish, nor will it license another to establish, within [Bruce's service area], a location from which to operate a Terminix System," Doc. 1-1 at 9 § VII/A, nor will it establish "a location from which to operate a business similar to the Terminix System, under a name other than TERMINIX." *Id.* at 9 § VII/B. The License Agreement defines the Terminix System to include the "experience, skill and special techniques and know-how in a business . . . of rendering termite and other pest control and related services." *Id.* at 4.

In 2018 and 2019, Terminix's parent company acquired two entities involved in pest control in Bruce's exclusive service area. Doc. 121 at 2. Bruce sued Terminix and asserted various state law claims, including breach of contract. Doc. 1 at ¶¶ 135–185. At summary judgment, the Court held that these acquisitions were not breaches of the License Agreement but that allowing the entities to use the Terminix name, brand, and system was a breach of the Agreement. Doc. 108 at 8–10. After addressing the scope of

2

the phrase "Terminix System," *id.* at 5–6, 8–9, the Court held, among other things, that

the undisputed facts showed Terminix had breached the License Agreement by providing

the Terminix System to entities operating in Bruce's service area.  *Id.* at 8–10.

In 2023, the Court entered declaratory judgment that addressed the meaning of

"the Terminix System," in light of the parties' dispute.  Doc. 122 at ¶ 5.  The Court

declared that the Terminix System includes:

a. Training materials demonstrating the experience, skill and special techniques and know-how in the business of rendering termite and other pest control, including but not limited to the Aspire training guide;

b. Service protocols, product and sales guides, sales and service training, new hire training, policies and procedures manuals, and other technical Terminix information demonstrating the experience, skill and special techniques and know-how in the business of rendering termite and other pest control found on the Terminix intranet sites, Terminix Nation

c. Terminix advertising, marketing, and lead generation materials;

d. Terminix product sourcing and vehicle fleet management services;

e. Terminix-branded products and services, such as but not limited to Disinfectix and Tick Defend; and

f. Other such confidential and valuable information that constitute and are part of the Terminix System.

*Id.*  The Court also entered a permanent injunction which, in relevant part, enjoined

Terminix from "authorizing or permitting, directly or indirectly, . . . Rentokil Initial Plc,

and its affiliates and subsidiaries, . . . to use, directly or indirectly, the Terminix

System . . . within Bruce's service area."  *Id.* at ¶ 6(b).

3

Rentokil is another large pest control company.  It does business across the United States primarily through subsidiaries like Bug Out.  Bug Out operates in Bruce's service area and competes with Bruce.  Doc. 108 at 7; Doc. 133 at ¶ 7.

In 2022, while this litigation was pending, Rentokil acquired Terminix.  Doc. 141 at ¶ 52; Doc. 108 at 7 n.5.  The Court held that the merger of Terminix and Rentokil did not necessarily constitute a breach of the License Agreement, nor did the disclosure of the Terminix System to Rentokil, "so long as Terminix does not provide Rentokil with permission for Rentokil's operators within Bruce's territory to use the Terminix name, brand, or system."  Doc. 108 at 11–12.

On December 23, 2024, Bruce filed a motion for an order to show cause why Terminix should not be held in civil contempt of Court for violations of the permanent injunction.  Doc. 131 at 1.  Specifically, Bruce contends that Terminix is violating the injunction because it is providing Bug Out with access to the Terminix System, including service offerings, training guides, and its intranet system.[1]  *Id.* at ¶¶ 7–9.

After review of the briefing and submission of evidence, *see* Docs. 133 to 137, 139 to 142, 145, the Court required Terminix to show cause as to why it should not be held in civil contempt for allowing Bug Out to use the Terminix System.  Doc. 146.  The Court held a hearing on March 10, 2025, at which both parties presented evidence and

---

[1] Bruce also asserted that Terminix was violating the injunction because of errors in phone call routing and job postings and a dispute about servicing one client.  Doc. 132 at 8–9.  The Court denied Bruce's motion as to those purported violations, and it ordered Terminix to show cause only based on the alleged Terminix System violations.  Doc. 146.

4

arguments. Minute Entry 03/10/2025. The parties have since submitted written closing arguments, Docs. 151, 152, and rebuttal closing arguments. Docs. 154, 155.

## II.    Civil Contempt

District courts have "the inherent authority to hold parties in civil contempt" to ensure compliance with their lawful orders. *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 617 (4th Cir. 2018) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). A court may impose civil contempt remedies "to coerce obedience to a court order" or to compensate a party for injuries resulting from the contemnor's noncompliance. *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004).

Before a court holds a party in civil contempt, it must provide the alleged contemnors with "notice and an opportunity to be heard." *Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 827 (1994). A contempt order requires proof by clear and convincing evidence: (1) that there was a valid decree of which the alleged contemnor had knowledge; (2) that the decree benefitted the moving party; (3) that the alleged contemnor violated the terms of the decree and knew he violated its terms; and (4) that the moving party suffered harm. *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 145 (4th Cir. 2023). Once there is a "prima facie showing of these elements, the burden shifts to [the] alleged contemnor to justify his non-compliance." *U.S. Commodity Futures Trading Comm'n v. Capitalstreet Fin., LLC*, No. 09-CV-387, 2010 WL 2131852, at *2 (W.D.N.C. May 25, 2010) (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)).

5

The alleged contemnor's lack of willfulness "does not relieve [it] from civil contempt." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *see also Sugar v. Burnett*, 130 F.4th 358, 377 (4th Cir. 2025). Because the purpose of civil contempt is remedial, not punitive, it does not matter "with what intent the defendant did the prohibited act." *McComb*, 336 U.S. at 191; *accord In re Walters*, 868 F.2d 665, 668 (4th Cir. 1989).

## III. Findings of Fact

The Court has considered the entire record in light of its deep experience with this case. The Court makes the following findings of fact by clear and convincing evidence and enters the following conclusions of law. The undisputed facts set forth in the summary judgment order, Doc. 108 at 1–7, have been established by clear and convincing evidence and are incorporated in full by reference. As necessary, other facts will be discussed in the context of the issues throughout this order.

On March 31, 2024, after the permanent injunction was entered, the defendant, Terminix International Company Limited Partnership divided into two companies: Terminix International Company Limited Partnership (Terminix) and Terminix International Company II Limited Partnership (T2). Doc. 141 at ¶ 48; Doc. 141-1 at 1–9. In the division, Terminix received, among other things, the License Agreements with Bruce and the 21 other licensees; all debts, liabilities, and duties associated with those agreements; and the right to use the Terminix trademark in the licensees' territories. Doc. 141 at ¶ 49; Doc. 141-1 at 13–15. T2 received everything else from Terminix, including much of the Terminix System. Doc. 141 at ¶ 50; Doc. 141-1 at 16; Doc. 150 at 88.

6

After the division, Rentokil acquired the assets of T2. Doc. 141 at ¶ 51. Terminix has no employees; all Terminix employees became employees of Rentokil, and Terminix is now entirely run by employees of Rentokil. Doc. 150 at 90–92. By this corporate restructuring, Terminix, the defendant here, has given Rentokil permission to use the Terminix System. Any rights Rentokil has to the Terminix System come from Terminix, and Rentokil is subject to the limitations and obligations in the License Agreement with Bruce as it relates to the Terminix System. *See* Doc. 108 at 9.

Through the License Agreement, Bruce has exclusive rights to the Terminix name, brand, and system in its 17-county service area in North Carolina. *Id.* at 2. Before Rentokil acquired Terminix, it owned and operated pest control companies that competed with Bruce in this service area. Doc. 133 at ¶ 4; Doc. 150 at 80. Rentokil now operates in Bruce's service area through a subsidiary called "Bug Out," Doc. 133 at ¶ 7; *see also* Doc. 150 at 83–84. Rentokil also owns and operates branches outside of Bruce's service area that use the Terminix name, brand, and system.[2] Doc. 150 at 95, 97; *see also* Doc. 147-8.

After its acquisition of Terminix, Rentokil began consolidating and "harmonizing" its materials and systems with Terminix's materials and systems. Doc. 133 at ¶ 37–39; *see also* Doc. 134-2; Doc. 148-4. While the parties have not fully clarified the scope of these materials and exactly who gets access to what, it is clear that since the acquisition, Rentokil has allowed Bug Out to use materials that are substantively identical to those it

---

[2] For lack of a clearer term, the Court will refer to these as "Rentokil-owned Terminix branches" or "company-owned Terminix branches."

provides to Rentokil-owned Terminix branches. Rentokil does this with Terminix's permission and authority.

## A. Trusted Advisor

Trusted Advisor is a lead-generation and sales program that prompts technicians to ask themselves seven questions while they provide services customers, the answers to which may identify new areas of service to offer to those customers. Doc. 133 at ¶ 24; Doc. 147-1; Doc. 150 at 77–78, 94. For example, the program directs technicians to consider whether there are areas of the residence with standing water or potential rodent entry points, so the technician can offer an additional service related to those problems. Doc. 147-1. Trusted Advisor also provides a financial incentive to technicians for successfully "up-selling" customers. Doc. 150 at 78.

Rentokil, with Terminix's permission, provides both Bug Out and Rentokil-owned Terminix branches with the Trusted Advisor program. Doc. 133 at ¶¶ 23, 30–31; Doc. 133-9 at 2; *see also* Doc. 141 at ¶ 38. There are no differences between the Trusted Advisor materials that Rentokil-owned Terminix branches receive and those that Bug Out receives.[3] Trusted Advisor is a "lead generation material[]" and a "[s]ervice protocol[]," both of which are part of the Terminix System, as defined by court order. Doc. 122 at

---

[3] Bug Out and Rentokil-owned Terminix branches use different applications to track the information the technicians acquire through the Trusted Advisor program, and they respond to the information differently. Doc. 150 at 78–79. Technicians at Rentokil-owned Terminix branches can try to sell the customer additional services on the spot, whereas Bug Out technicians send the information to the sales team so a sales representative can follow up later. *Id.* This does not change the fact that the technicians receive the same questions and materials for the Trusted Advisor program, Doc. 147-1, the only differences are the app they use to track the information and how they respond to the leads. *See* Doc. 150 at 78–79.

8

¶¶ 5(b), (c).  It is the type of "know-how" of the pest control business that the License

Agreement includes as part of the Terminix System.  *See* Doc. 1-1 at 4.  Terminix has

given Rentokil permission to use and distribute the Trusted Advisor program to Bug Out,

even though it is part of the Terminix System.

### B. PestFree365

Rentokil has products called PestFree365 and PestFree365+ that it makes available

for its company-owned Terminix branches to offer to customers.  Those are a two-tiered

treatment service product for year-round protection from set lists of pests.  Doc. 133 at

¶ 42; Doc. 134-6 at 2–3.  Rentokil provides company-owned Terminix branches with

Terminix-branded PestFree365 sales and marketing materials for these products.  Doc.

147-8.  PestFree365 is part of the Terminix System as defined by court order; it is a

"Terminix-branded product[] and service[]," *see* Doc. 122 at ¶ 5(e), and it constitutes

Terminix advertising and marketing materials.  *See id.* at ¶ 5(c).  Terminix has given

Rentokil permission to use the Terminix name and system in this way.

Rentokil provides Bug Out with the identical service offerings and marketing

materials, with only two small differences:  the products Bug Out offers are called Year-

Round Pest Protection Plan and Year-Round Pest Protection Plan+, and their materials do

not include the Terminix name or brand.  *Compare* Doc. 134-6, *with* Doc. 134-8; *see also*

Doc. 141 at ¶ 40.  Bug Out uses Year-Round PPP in Bruce's service area.  Doc. 141 at

¶ 40; *see also* Doc. 134-9.  Because PestFree365 is part of the Terminix System and Year-

Round PPP is its identical sibling, Year-Round PPP is also part of the Terminix System.

Terminix has given Rentokil permission to distribute this part of the Terminix System to Bug Out.

Since Rentokil removed the Terminix brand and name from Year-Round PPP, Terminix is not violating the parts of the injunction that enjoin it from authorizing Bruce's competitors to use the Terminix name and brand. But as the Court made clear during the earlier phase of this litigation, the injunction covers more than the Terminix name and brand; it covers the Terminix System. *See, e.g.*, Doc. 108 at 2–3, 8–9; Doc. 121 at 9–10. Because Terminix allows Rentokil to provide Bug Out with access to materials that are identical to those used by Terminix branches except for name and branding, Bug Out can offer the same service as Terminix. Terminix and Rentokil cannot avoid the directives in the permanent injunction merely by changing the name and branding.

## C. RTX Nation

RTX Nation is Rentokil's intranet system. Doc. 133 at ¶ 49; Doc. 141 at ¶ 20. It is available to Rentokil-owned Terminix branches, Bruce, and Bug Out. Doc. 133 at ¶¶ 9, 23, 55–57; Doc. 135-1. Through RTX Nation, users have access to a number of resources, including an internal social media platform, Doc. 133 at ¶ 52; Doc. 135-1 at 2, and training information on both RTX Nation and U+, a training website that is linked to RTX Nation. Doc. 150 at 45–46; Doc. 141 at ¶ 21.

On RTX Nation and U+, Rentokil offers Terminix-branded trainings to company-owned Terminix branches and Bruce, and it provides Rentokil-branded trainings to Bug Out. Doc. 141 at ¶ 21. It does this with permission from Terminix. At least some of

10

those trainings are substantively identical to each other, with the only difference being the branding.  *Compare* Doc. 148-5, *and* Doc. 135-8, *with* Doc. 148-6, *and* 135-9.  Bug Out employees have used at least one of these trainings.  Doc. 150 at 53.

"The Hive" is an internal social media platform available on RTX Nation. Employees can post news, best service practices, and awards for employees' achievements.  Doc. 133 at ¶ 54; Doc. 135-1.  Rentokil-owned Terminix branches, Bug Out, and Bruce all have access to the Hive.  Doc. 133 at ¶¶ 55–56; Doc. 135-1.

RTX Nation is covered by the definition of the Terminix System.  It is similar to the intranet platform that Terminix operated before the merger called Terminix Nation, which also included trainings, resources, and "the Hive."  *Compare* Doc. 134-5 at 2, *with* Doc. 135-3 at 3; Doc. 135-1.  The Court previously declared that Terminix Nation was part of the Terminix System.  Doc. 108 at 9; Doc. 122 at ¶ 5(b).

To the extent Rentokil-owned Terminix branches have access to RTX Nation, RTX Nation is part of the Terminix System, as are any identical-except-for-branding training materials available on RTX Nation.  Doc. 122 ¶ 5(a) (defining "training materials" as part of the Terminix System).  Any shared information on RTX Nation about services and other topics identified in the declaratory judgment are part of the Terminix System.  *See id.* at ¶ 5.  Rentokil gives Bug Out access to this part of the Terminix System with the permission of Terminix.

### D. Reputation

Reputation is a customer satisfaction management tool that allows technicians to send customers text messages so the customers can leave a Google review.  Doc. 133 at

¶ 32; Doc. 134-1.  A third-party created Reputation, and many other businesses use the Reputation software.  Doc. 141 at ¶ 27.  Rentokil has rolled out Reputation to Rentokil-owned Terminix branches and Bug Out.  *See* Doc. 133 at ¶¶ 34, 57; Doc. 134-1.  There is no evidence that Reputation has been specifically tailored for use in the pest-control business.  Reputation is not part of the Terminix System; on the evidence presented, it does not seem substantively different from a standard tool like Microsoft Word.

## IV.  Terminix is In Contempt of Court

### A.  Terminix is Violating the Injunction by Allowing Bug Out to Use Terminix System Materials in Bruce's Service Area

The permanent injunction, Doc. 122 at ¶ 6, is a valid decree issued by this Court, and Terminix had actual knowledge of it.[4]  The injunction benefited Bruce, as it was designed to prevent Terminix from ongoing violations of the License Agreement.  *See* Doc. 121 at 7–9; Doc. 122 at ¶ 6.[5]

Terminix has violated the injunction by consenting to and actively participating in a scheme that gives Bug Out, a competitor within Bruce's exclusive territory, access to parts of the Terminix System.  Year-Round PPP, Trusted Advisor, and the parts of RTX Nation that are available to Rentokil-owned Terminix branches are part of the Terminix System, and the injunction prohibits Terminix from "[a]uthorizing or permitting, directly or indirectly . . . Rentokil Initial Plc, and its affiliates and subsidiaries . . . to use, directly

_____

[4] Terminix has not contested knowledge.  Terminix and now Rentokil have employed a compliance specialist whose job it is to ensure they comply with the injunction.  Doc. 141 at ¶¶ 1–2; Doc. 150 at 93.

[5] Terminix has not contested that the injunction was in Bruce's favor.

or indirectly, the Terminix System . . . within Bruce's Service Area." Doc. 122 at ¶ 6(b). The language in the permanent injunction is clear and put Terminix on notice that it could not allow Rentokil to give Bug Out, or other pest control businesses that operate in Bruce's service area, access to the Terminix System. By doing so, it forces Bruce to compete in its territory with a business that has access to something only Bruce is entitled to access and use. *See id.* at ¶ 6(a).

Terminix contends that it cannot be held in contempt because after the corporate restructuring, the rights to the Terminix System now flow from Rentokil to Terminix, not from Terminix to Rentokil. Doc. 140 at 24. But Rentokil has no rights to the Terminix System other than the rights it acquired from Terminix, and as the Court has previously explained, Terminix cannot give another entity greater rights than it has. Doc. 108 at 9. As the Court also previously held, Terminix cannot authorize Rentokil to give the Terminix System to a competitor in Bruce's territory, and if it does so, that violates the License Agreement. *Id.* at 11. No corporate restructuring allows Terminix to avoid its obligations under the License Agreement or to avoid complying with the permanent injunction. All of the evidence is that Rentokil is acting with Terminix's authorization and permission. There is no evidence that Rentokil is a rogue actor.

Terminix contends that PestFree365 and many of the materials on RTX Nation were created by Rentokil, so they are not part of the Terminix System. Doc. 140 at 13, 18. According to Terminix, "Bruce did not bargain for, and neither the License Agreement nor the injunction grant exclusive access to non-Terminix material created by a third-party that acquired Terminix." *Id.* at 13. But the particular corporate entity that

13

created a product or the marketing idea is not determinative of whether material is part of the Terminix System. Rentokil-owned Terminix branches use Terminix-branded materials like PestFree365 and trainings on RTX Nation. *See, e.g.*, Docs. 147-8; 148-5. When Rentokil, with Terminix's permission, gives its branded operators access to materials that fall within the definition of the Terminix System and authorizes them to use those materials, those materials become part of the Terminix System, regardless of who created them.

Similarly, Terminix contends that Trusted Advisor and PestFree365 are not part of the Terminix System because Bruce does not use them. Doc. 140 at 18; Doc. 152 at 5. Terminix points to no evidence that Bruce must have access to a material for the material to be part of the Terminix System or that Bruce must use every part of the Terminix System. Nothing in the License Agreement or the declaratory judgment gives Terminix or Rentokil the right to define something as part of the Terminix System for their own operations but not as part of the Terminix System when it comes to Bruce. Trusted Advisor and Year-Round PPP are part of the Terminix System, and Terminix allows Rentokil to make this Terminix System material available to Bug Out, a competitor within Bruce's exclusive territory. This violates the injunction.

Terminix also contends that "[i]dentical material with different branding *can* be shared, as long as the shared material was never part of the Terminix System as defined by the Court." Doc. 140 at 22–23; *see also id.* at 18–19 (Terminix contending that because PestFree365 is marketed by Bug Out as Year-Round PPP, it is not part of the Terminix System). This argument assumes that the definition of the Terminix System is

14

stuck in time. But that assumption is unjustified. There is no evidence that the Terminix System stayed exactly the same from the time Bruce and Terminix entered into the License Agreement in 1975 until Rentokil bought Terminix. In fact, the License Agreement itself anticipated that the Terminix System would change over time, *see* Doc. 1-1 at 7 § V, and Terminix developed some of the materials that the Court previously held were part of the Terminix System after the parties executed the License Agreement in 1975. *See* Doc. 108 at 5–6 (citing Doc. 88-16 at 16); Doc. 1-1 at 4.

Second, the injunction is not limited to branding. As the declaratory judgment made clear, the Terminix System is about a wide variety of materials, protocols, guides, trainings, manuals, products, and information. *See* Doc. 122 at ¶ 5. Terminix has given Rentokil permission to provide Bug Out with the exact same materials it gives Terminix operators elsewhere. Merely changing the name and branding does not defeat Bruce's exclusive rights to the Terminix System within its territory.[6]

Terminix contends that Trusted Advisor is not part of the Terminix System because "[i]t is just the type of program that every home-service business has or should have." Doc. 140 at 17. Likewise, Terminix contends that the trainings Bruce identifies are the

---

[6] Under the License Agreement, Terminix agreed that it "will not itself establish, nor will it license another to establish, within [Bruce's service area], a location from which to operate a Terminix System," Doc. 1-1 at 9 § VII/A, and precludes it from establishing "a location from which to operate a business similar to the Terminix System, under a name other than TERMINIX." *Id.* at 9 § VII/B. Bug Out's predecessor was a Rentokil business that existed before the merger and thus it was not "established" in violation of the License Agreement. But these provisions of the License Agreement make clear that the parties agreed Terminix would not take new steps to promote a competitor within Bruce's territory. Yet this is essentially what Terminix did when it authorized Rentokil to make aspects of the Terminix System available to Bug Out after the merger.

15

types of trainings any pest control business would use.  Doc. 152 at 8.  But there is no evidence that Trusted Advisor or these trainings are off-the-shelf materials.  Trusted Advisor is specifically designed for the pest-control business with seven questions for lead generation and protocols for approaching upselling.  Doc. 147-1.  The training Bruce identifies was designed with the "know-how" of pest control businesses, Doc. 1-1 at 4, and it uses Terminix branding.  Doc. 148-5.  These materials would be useless to someone selling tires, face lotion, or encyclopedias.  They are part of the Terminix System.

Terminix contends that the Court denied Bruce's motion to show cause as to RTX Nation.  Doc. 155 at 7–8.  That is not accurate.  The show cause order was directed to violations of the injunction's provision prohibiting competitors in Bruce's territory from using the Terminix System.  Doc. 146.  The listed examples were not exclusive and specifically included "trainings."  Doc. 146.  As noted *supra*, "trainings" are part of RTX Nation.  Doc. 122 at ¶ 5(a).

Terminix contends that RTX Nation "generally does not" include "sales, marketing, and other training materials," and that Rentokil provides training through U+, "its own learning management system."  Doc. 140 at 12.  Perhaps that is so, but it is undisputed that RTX Nation includes some resources and trainings that are available to Rentokil-owned Terminix branches, Bug Out, and Bruce on RTX Nation.  Doc. 133 at ¶ 58; Doc. 150 at 45–46.  And allowing Rentokil to provide identical-except-for-branding trainings that are part of the Terminix System to Terminix and Bug Out is violative of the injunction, regardless of the platform through which they are offered.

16

The permanent injunction enjoins Terminix from "permitting . . . Rentokil Initial Plc, and its affiliates and subsidiaries ('Rentokil'), or the successors and agents thereof, to use, directly or indirectly, the Terminix System . . . within Bruce's service area." Doc. 122 at ¶ 6(b). That is what Terminix has done. As it did throughout this litigation, Terminix has taken an unreasonably narrow definition of the Terminix System. *See, e.g.*, Doc. 121 at 9-10 (reviewing Terminix's arguments about the narrow definition of the System and noting "Terminix's unexplained intransigence and willingness to ignore violative conduct"). Bruce is the only pest control business that can use the Terminix System in its service area. By authorizing Rentokil to share aspects of that System with Bug Out, Terminix violates the injunction.

## B. Bruce is Being Harmed by the Violation of the Injunction

Bruce must also demonstrate that it has suffered harm because of the violation. *dmarcian, Inc.*, 60 F.4th at 145. "Where a prior judgment includes a finding that the contemnor's conduct harmed the movant, that finding continues to bind the contemnor." *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 534 (4th Cir. 2022) (cleaned up). A party moving for contempt does not "need to prove a direct connection between each violation and the harm [it] suffered." *Id.* In the civil contempt context, the party may show "informational harms not connected to any specific monetary loss." *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 465 (4th Cir. 2020).

Here, as was the case when the Court issued the permanent injunction, Terminix's conduct has undermined Bruce's competitive advantage. *See* Doc. 121 at 8. Bruce now must compete against a pest control business that has access to the very information

17

Terminix promised not to provide to a competitor. That is exactly the kind of harm the injunction was designed to prevent. Terminix is correct that Bruce does not have a right to be free from competition, Doc. 140 at 26, but under the License Agreement, it has a right not to compete within its exclusive territory with a company using any part of the Terminix System.

Terminix contends that Bruce cannot rely on the harm the Court found when it issued the permanent injunction. *Id.* at 25; Doc. 152 at 8–9. The Fourth Circuit in *De Simone* says otherwise, 36 F.4th at 534, and Terminix does not support this contention with any higher authority. In any event, Bruce has shown harm because it is facing the kind of competition expressly prohibited by the License Agreement and the injunction.

### C. Terminix Has Not Acted in Good Faith or Substantial Compliance

Willfulness is not an element of contempt, and a subjective intent to comply with an injunction does not relieve a party from civil contempt. *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019); *McComb*, 336 U.S. at 191. It can be relevant, however, as the Supreme Court has made clear. *Taggart*, 587 U.S. at 562. If the contemnor shows that it "made in good faith all reasonable efforts to comply with the decree," or that it took "all reasonable steps . . . to ensure compliance," a finding of contempt may not be warranted. *De Simone*, 36 F.4th at 529–30 (cleaned up).

Here, Terminix took a number of steps to ensure compliance. It hired a compliance specialist, Doc. 140 at 27; Doc. 141 at ¶¶ 1–2, who has helped ensure that Terminix and Rentokil comply with the injunction's restrictions on the use of the Terminix name and brand. There have been only a few small problems with improper

18

use of the Terminix brand in Bruce's exclusive territory, and Terminix and Rentokil have taken quick steps to correct those problems when they have been brought to its attention.

But the same cannot be said for Terminix's compliance with the requirements of the injunction directed to the Terminix System. Two years ago, the Court rejected the defendant's position that the Terminix System was only the brand; it specifically held that the Terminix System is important and must mean something. *See* Doc. 121 at 10 (noting Terminix's contention that a training system "has no value is inconsistent" with the License Agreement); Doc. 122 at ¶ 5. Terminix knows this. Doc. 150 at 105 (defense counsel acknowledging that "[t]he Court rejected position that on summary judgment."). Yet as it did during earlier stages of this litigation, Terminix continues to downplay the value of its System. *See, e.g.*, *id.* at 104 ("Pest control is pest control. These businesses are about branding."); *id.* at 105 ("Branding, . . . that's the point."). It continues to construe the Terminix System narrowly, as barely more than the brand and the name. Terminix has also structurally reorganized post-merger in a way that purports to give Rentokil exclusive control over what is and is not part of the Terminix System, and Rentokil purports to apply different definitions depending on whether one is a legacy licensee like Bruce or a company-owned branch. *See id.* at 102–04. When it comes to its definition of the Terminix System, Terminix has not acted in good faith, nor has it substantially complied with the injunction.

## V.    Remedy

"A court may impose sanctions for civil contempt to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy."

*SmartSky Networks, LLC v. Wireless Sys. Sols., LLC*, 630 F. Supp. 3d 718, 729–30 (M.D.N.C. 2022) (cleaned up) (quoting *Cromer*, 390 F.3d at 821). Courts have broad discretion to fashion a remedy "based on the nature of the harm and the probable effect of alternative sanctions." *Id.* at 730 (quoting *Cree, Inc. v. Bain*, No. 15-CV-547, 2015 WL 12911462, at *3 (M.D.N.C. July 20, 2015)).

While Terminix's violations are nothing to sneeze at, they have been fairly narrow, at least to date. Once the permanent injunction and declaratory judgment were entered, Terminix and Rentokil became much more conscientious about branding violations, and they have made a much stronger effort than before, when the Court characterized Terminix's response to branding violations as "intransigence" and as a "willingness to ignore violative conduct." Doc. 121 at 10. A daily fine might be appropriate, but the Court is optimistic that Terminix will comply without a fine.

If Terminix continues to ignore the Court's injunction, a fine, attorney's fees, or other significant coercive remedies will be appropriate.

The Court will give Terminix approximately four months to submit evidence that it has brought itself into compliance with the injunction. If it does not purge its contempt, the Court will evaluate more significant remedies.

## VI.    Contempt Against Rentokil

Bruce asserts that Rentokil is bound by the injunction under Federal Rules of Civil Procedure 25 and 65 and suggests that the Court can hold Rentokil in contempt. Doc. 145 at 8–9; Doc. 154 at 6. Rentokil is likely bound by the injunction under Rule 65(d), *see EEOC v. Int'l Longshoremen's Ass'n*, 541 F.2d 1062, 1063–64 (4th Cir. 1976); *see*

20

*also* Fed. R. Civ. P. 65(d), but "[w]hen an aider-and-abettor was not a party to the underlying proceedings that led to the injunction, it must nonetheless be made a party to the contempt proceedings." *Receiver for Rex Venture Grp, LLC v. Banca Comerciala Victoriabank SA*, 843 F. App'x 485, 492 (4th Cir. 2021) (quoting *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 229 (4th Cir. 2019)); *see also Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 112 (1969) ("It was error to enter the injunction against Hazeltine, without having made this determination in a proceeding to which Hazeltine was a party."). Similarly, Rule 25(c) allows substitution of a party on motion and with service. Fed. R. Civ. P. 25(c).

Should Terminix and Rentokil continue to disregard the permanent injunction, and should Bruce want to hold Rentokil responsible, Bruce will have to do more than make a suggestion.

It is **ORDERED** that the motion to find the defendants in civil contempt, Doc. 131, is **GRANTED**; the defendants are in civil contempt; and Terminix **SHALL** file one or more declarations under oath no later than August 25, 2025, showing that it has purged itself of its contempt.

This the 22nd day of April, 2025.

_____
UNITED STATES DISTRICT JUDGE